# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## COMMONWEALTH OF VIRGINIA, AT THE RELATION OF THE AUGUSTA COUNTY FARMERS MUTUAL TELEPHONE COMPANY, v. STAUNTON MUTUAL TELEPHONE COMPANY, (Chesapeake and Potomac Telephone Company of Virginia substituted.)

November 16, 1922.

Absent, Prentis, J.

1. DISMISSAL, DISCONTINUANCE AND NONSUIT—*Equity—Right to Dismiss Suit.*—It is a general rule of chancery practice that a plaintiff may dismiss his bill without prejudice at any time before final decree.

2. DISMISSAL, DISCONTINUANCE AND NONSUIT—*Equity—Right to Dismiss Suit—Exceptions.*—The rule that in equity a plaintiff may dismiss his bill without prejudice is subject to exceptions. Thus, when a proceeding is instituted by a trustee, or involves the administration of a trust estate, which is peculiarly under the jurisdiction of courts of equity, or where in the progress of the case rights have been manifested which the defendant is entitled to claim, the plaintiff has not this right to dismiss his bill without prejudice at any time before final decree.

3. EQUITY—*Parties—Regulation of Public Service Corporation—Public as a Party—Right to Petitioner to Dismiss Proceeding Before Corporation Commission.*—A proceeding before the Corporation Commission instituted by one telephone company against another for the purpose of forcing physical connection between the two telephone systems is in the nature of a chancery suit. Yet in all such cases involving the regulation of public service corporations, the public as well as the nominal parties has an interest which the law requires the commission to protect, to the end that the service rendered the public may be efficient and the best to be had under the circumstances. And in view of the public interests involved, the propriety of permitting the petitioner to dismiss the proceeding is a matter within the sound discretion of the commission, and where, as in the instant case, that discretion has not been abused, the Supreme Court of Appeals will not disturb its ruling.

4. TELEGRAPHS AND TELEPHONES—*Association of Privately Owned Lines— Jurisdiction of Corporation Commission.*—The facts that a telephone company has the word "mutual" in its name, and fails to charge rates high enough to show a profit, do not establish the contention that it is a mutual company and not subject to the control of the Corporation Commission. The test of jurisdiction depends upon whether it is a public utility, or a public service corporation operated for the public use.

5. TELEGRAPHS AND TELEPHONES—*Association of Privately Owned Lines— Jurisdiction of Corporation Commission—Case at Bar.*—In the instant case, an appeal from a judgment of the State Corporation Commission, requiring plaintiff and defendant telephone companies to maintain physical connection between their respective systems, it was contended for plaintiff company that it was not a transmission, or telephone company, for hire, but was organized as a mutual company for the benefit of its members, who owned the lines, and being such a company, the commission had not the power and was not charged with the duty of regulating and controlling it. The company admitted that it was a public service corporation, and there could be no doubt that it was a public utility within the meaning of sections 4064 and 4067 of the Code of 1919, but insisted that the test of the jurisdiction of the Coropration Commission was whether or not the service was for hire, relying on subsection (b) of section 156 of the Constitution of 1902.

   *Held:* That, under sections 4064 and 4067 of the Code of 1919, enacted in pursuance of subsection (c) of section 156 of the Constitution of 1902, the company was subject to the regulation and control of the State Corporation Commission.

6. CORPORATION COMMISSION—*Jurisdiction of Commission—Mutual Telephone Companies—Sections 4064 and 4067 of the Code of 1919.*—Sections 4064 and 4067 of the Code of 1919, enacted in 1914, are not unconstitutional because they vest the Corporation Commission with the power of supervising, regulating and controlling mutual telephone companies, which may be classed as public utilities or public service corporations, and which do not furnish service for hire in the usual way, or make rates for profit.

7. CONSTITUTIONAL LAW—*Power of Legislature.*—The legislature of the State possesses all legislative power not prohibited in express terms, or by necessary implication, by the State Constitution or the Constitution of the United States.

8. CONSTITUTIONAL LAW—*Construction of Constitutions—State Constitution —Constitution of the United States—Strict or Liberal Construction— Presumption in Favor of Constitutionality.*—The grant of power by the Federal Constitution to Congress is the only source of congressional power, and must, therefore, be strictly construed, while a grant of power by the State Constitution to the legislature, being merely

declaratory of power already possessed by it, is to be liberally construed in doubtful cases, and the courts should resolve all doubt in favor of the constitutionality of the act. An act of the General Assembly cannot be declared void except where such act clearly and plainly violates the Constitution.

9. CORPORATIONS—*Police Power—State Corporation Commission.*—The general purpose of the corporation clause of the Virginia Constitution of 1902 was to bring all public service corporations under the control of the police power of the State, and subject to the supervision of the State Corporation Commission.

10. WORDS AND PHRASES—*"Inconsistent"—"Incompatible."*—Webster defines "inconsistent" as "incompatible," and says things are incompatible when they cannot coexist, and further that they are inconsistent when they are opposed to each other.

11. STATE CORPORATION COMMISSION—*Powers of Commission—Constitutionality of Sections 4064 and 4067 of the Code of 1919.*—While it is true that subsection (c) of section 156 of the Constitution of 1902, vesting the State Corporation Commission with additional powers, is restricted by the requirement that such additional powers must not be "inconsistent with this Constitution," yet sections 4064 and 4067 of the Code of 1919, putting into effect powers of the commission which were theretofore dormant, are not inconsistent or incompatible with the Constitution.

12. TELEGRAPHS AND TELEPHONES—*Connection Between Two Telephone Systems—Flat Rate.*—A judgment of the Corporation Commission ordering the physical connection between two telephone systems provided for a flat rate per station for the interchange of messages, whereas appellant contended that there should have been a charge per message. The flat rate is usually adopted by telephone companies to cover intercommunication among their local subscribers, and if two local companies are physically connected, there is no valid objection to applying the flat rate to the local 'phones of both companies.

13. TELEGRAPHS AND TELEPHONES—*Order for Physical Connection Between two Telephone Systems—Terms and Conditions upon which Connection shall be made.*—In fixing the terms and conditions upon which a physical connection shall be made between two telephone systems, some credit should be given for the difference in amount of capital invested in the construction and equipment of the two plants.

14. TELEGRAPHS AND TELEPHONES—*Order of State Corporation Commission for Fixing Connection Between Two Telephone Systems—Cost of Connection—Amendment of Order by Supreme Court of Appeals.*—An order of the State Corporation Commission for fixing connection between two telephone systems provided for a flat rate per station to be paid by one company to the other as compensation for the expense of building and maintaining the connection.

*Held:* That if the flat rate should prove to be more than necessary for

that purpose, the excess should be refunded to the company paying it, and the Supreme Court of Appeals amended the order of the Corporation Commission to that effect.

Appeal from a judgment of the State Corporation Commission.

*Amended and affirmed.*

The opinion states the case.

*Quarles & Pilson,* for the appellant.

*C. W. Artz, J. M. Perry,* and *Timberlake & Nelson,* for the appellee.

West, J., delivered the opinion of the court.

This is an appeal from a judgment of the State Corporation Commission, entered on the 27th day of April, 1921, requiring the plaintiff and defendant companies to maintain physical connection between their respective telephone systems, upon terms stated in said judgment.

For many years the Staunton Mutual Telephone Company, the predecessor of the Chesapeake and Potomac Telephone Company of Virginia, which has been substituted as defendant, hereafter called the city company, has maintained a telephone exchange in the city of Staunton and performed telephone service for its patrons over its own lines in and adjacent to the city of Staunton. On the 2nd day of August, 1916, it had connected with its switchboard in Staunton and the immediate vicinity about one thousand 'phones. In addition, it was customary for many years for farmers located in Augusta county to build their lines and install their own telephones, and to have their private lines connected with the lines of the city company at the corporate limits of the city. The city company had no responsibility with reference to the maintenance of these lines outside

of the corporate limits of the city. On the date last mentioned, there were sixty-two such private lines thus connected, upon which there were 1056 'phones thus privately owned.

Prior to the granting of the charter to the Augusta County Farmers Mutual Telephone Company, the petitioner, hereafter called the county company, in September, 1914, there were thirteen other such private lines, upon which there were 168 telephones, also connected with the Staunton switchboard of the city company. Each of the telephone owners located upon such private lines had connection through the Staunton switchboard with all of such telephones in the city of Staunton and in the county of Augusta, and unlimited service therewith, for which service each owner of such private telephone paid the city company the sum of three dollars per year.

In the latter part of 1915 the county company established its switchboard in the county of Augusta about 500 yards from the corporate limits of the city of Staunton, and the thirteen private lines last mentioned severed their direct connection with the Staunton switchboard of the city company and connected their lines with the switchboard of the county company. The avowed reason for the organization of the county company was dissatisfaction with the service of the city company.

This proceeding was instituted early in 1916 by the county company for the purpose of forcing the physical connection of its lines with the city company, upon terms fair and just. The Chesapeake and Potomac Telephone Company filed its answer objecting to the connection. Much evidence was taken on both sides, and on August 2, 1916, the commission entered an order requiring the city company and the county company

(whenever the county company should indicate its desire to do so upon terms stated in the order) to connect their telephone exchanges with each other for the interchange of messages between their subscribers. The line between the switchboard of the county company and the corporate limits of the city of Staunton was to be maintained in good order by the county company, and the line from the corporate limits of the city to its switchboard by the city company. The county company was required to pay to the city company the sum of three dollars per annum for each telephone on its lines thus connected, payable in advance in semi-annual instalments. Judge Prentis delivered the opinion of the commission in which Judge Rhea concurred, Commissioner Wingfield dissenting, on the ground that the three dollars to be paid by the county company to the city company was an excessive charge.

Under this decision, the connection was not *required* to be made, unless desired by the county company. The county company did not desire to connect upon the terms fixed by the commission, and no connection was made. The two companies continued to operate their respective exchanges for more than a year. On December 13, 1917, at the instance of a mass meeting held in Staunton, it appearing that the public interests required a further investigation of the case, the commission, acting through Chairman Garnett, entered an order referring the proceedings. to J. C. Dickerman, engineer and examiner, who was appointed special agent for the purpose, to investigate and report as to each and every complaint in the petition, and particularly whether the city company and the county company should be required to connect their exchanges; and, if so, the conditions of installation, maintenance and operation of the connection, and what charge, or

charges, if any, should be made against either the county company or the city company, because of the joint service between subscribers of the two companies. Engineer Dickerman investigated and on December 6, 1918, reported that the county company was not entitled to connection with the city company, but if the commission decided otherwise he thought the county company should pay one cent for each completed call it asks of the city exchange, while outgoing calls from the city exchange to the county should pass without charge. The report of Dickerman, with which the evidence taken by him was filed, was excepted to by both the plaintiff and the defendant.

In March, 1921, a petition, signed by numerous citizens and telephone subscribers of the city of Staunton, was filed, asking that physical connection be established between the two exchanges. On April 6, 1921, the plaintiff moved the court to dismiss the proceeding without prejudice, for reasons appearing in the record. The motion was overruled and the case was heard on its merits. The county company's counsel asked that no order be entered to the injury of either party; the city company's counsel urged the desirability of a settlement; and counsel for the Staunton Chamber of Commerce requested the commission, in the public interest, to see that the community was no longer divided, one part being cut off from the other.

On April 27, 1921, the commission rendered its decision and entered an order and judgment requiring the two companies to maintain physical connection between their respective systems, said connection to be made and the necessary connecting lines built and maintained at the expense of the city company; and requiring that thereafter the two companies should give free and uninterrupted service between their respective ex-

changes; and that after such physical connection had been made, it should be unlawful for the city company to make its switching charge in its exchange at Staunton to privately maintained rural lines less than the charge made by the county company for similar service; and that the county company should pay to the city company $2.00 per annum for each station on its lines.

The county company complains of this order and judgment, and relies on four assignments of error.

The first assignment is that the commission erred in overruling its motion to dismiss the proceeding without prejudice.

[1] It is a general rule of chancery practice that a plaintiff may dismiss his bill without prejudice at any time before final decree. Hogg's Eq. Procedure, Vol. 2, sec. 840; 1 Daniell's Chy. Pl. & Pr. (6th Am. Ed.) 790, and note.

[2] This rule is, however, subject to exceptions, as when a proceeding is instituted by a trustee, or involves the administration of a trust estate, which is peculiarly under the jurisdiction of courts of equity, or where in the progress of the case rights have been manifested which the defendant is entitled to claim. *Henderson* v. *Anderson*, 4 Munf. (18 Va.) 435; *Berry* v. *Second Bap. Church*, 37 Okl. 117, 130 Pac. 586; *Connor* v. *Drake*, 1 Ohio St. 170.

In the *Oklahoma Case, supra*, a suit for specific performance was brought by three church trustees, two of whom afterwards undertook to dismiss the suit. The court said: "A nominal party, who is acting merely in a representative capacity, has no right to dismiss an action to the prejudice of the real party in interest without his consent."

In the *Ohio Case, supra*, the court said: "After a defendant has been put to trouble to make his defense, if

in the progress of the case rights have been manifested that he is entitled to claim and which are valuable to him, it would be unjust to deprive him of them merely because the complainant might come to the conclusion that it would be for his interests to dismiss his bill."

[3] While it is true that the proceeding in the instant case is in the nature of a suit in chancery, yet in all such cases involving the regulation of public service corporations, the public as well as the nominal parties has an interest which the law requires the commission to protect, to the end that the service rendered the public may be efficient and the best to be had under the circumstances. In view of the public interests involved, as aforesaid, the propriety of permitting the petitioner to dismiss the proceeding was a matter within the sound discretion of the commission, and where, as in the case in judgment that discretion has not been abused, this court will not disturb its ruling.

[4, 5] The principal ground relied on in support of this motion is that the county company is not a transmission, or telephone, company, for hire; that it was chartered and organized as a *mutual* company for the benefit of its members, who own the lines and the telephones attached, and being such a company, the commission has not the power and is not charged with the duty of regulating and controlling it in matters relating to the performance of its duties.

The fact that a company has the word "mutual" in its name, or fails to charge rates high enough to show a profit, does not establish the contention that it is a mutual company and not subject to the control of the commission. The test of jurisdiction depends upon whether it is a public utility, or a public service corporation operated for the public use.

In the case of *Noble Telephone Co.* v. *Noble Mutual*

*Telephone Co., et al.*, 268 Ill. 411, 109 N. E. 298, Anno. Cas. 1916-D, 897, in which the Illinois statute defined a public utility very much as it is defined by our statute, it was held that the mere fact that an association of privately owned lines was not operated for profit did not determine that it was not a public utility; that the only question for determination was whether or not it directly or indirectly operated or managed its plant for a public use. The court held that it so managed and operated its plant, and therefore was a public utility and subject to the jurisdiction of the commission.

The Code of 1919, section 4067, declares that every company "that now or hereafter may own, operate, manage, or control any plant or equipment or any part of a plant or equipment within the State for the conveyance of telephone or telegraph messages * * either directly or indirectly to or for the public" is a "public utility." And section 4064 of the Code provides that every company operating a public utility in this State shall be deemed a public service corporation within the meaning of the Constitution and laws of the State of Virginia relating to public service corporations, "and as such shall be subject to the control of the State Corporation Commission."

There can be no doubt that the county company is a "public utility" within the meaning of the statute; and the county company admits that it is a "public service corporation," but insists that the test of the jurisdiction of the commission is whether or not service "for hire" is furnished by the owners of the system. This company relies on subsection (b) of section 156 of the Constitution for the proposition that the commission is restricted in its jurisdiction to telephone companies operating for hire. That section reads in part as follows:

"(b) The commission shall have the power and be

charged with the duty, of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, · *    *"

The county company contends that the language of the section, giving the commission authority to regulate and control such companies in all matters relating to the performance of their public duties and their charges therefor, could not include a mutual company which makes no charge to persons holding 'phones on its lines; but subsection (c) of section 156 of the Constitution provides as follows:

"The commission may be vested with such additional powers, and charged with such other duties (not inconsistent with this Constitution) as may be prescribed by law, in connection with the visitation, regulation or control of corporations, or with the prescribing and enforcing of rates and charges to be observed in the conduct of any business where the State has the right to prescribe the rates and charges in connection therewith, *  *"

In pursuance of the section of the Constitution last quoted the legislature in 1914 enacted a statute (Laws 1914, ch. 340), a part of which is now sections 4064 and 4067 of the Code of 1919, thereby putting into effect powers of the commission which were theretofore dormant. *Virginia W. P. Co.* v. *Clifton Forge*, 125 Va. 469, 99 S. E. 723, 9 A. L. R. 1148.

[6-8] It is true that subsection (c), investing the commission with additional powers, is restricted by the requirement that such additional powers must not be "inconsistent with this Constitution." Can it be said, as contended by the appellant, that the statute of 1914, *supra,*·because it vested the commission with the power of supervising, regulating and controlling mutual tele-

phone companies, which may be classed as public utilities or public service corporations, and which do not furnish service for hire in the usual way, or make rates for profit, is unconstitutional? The legislature of the State possesses all legislative power not prohibited in express terms, or by necessary implication, by the State Constitution or the Constitution of the United States. The grant of power by the Federal Constitution to Congress is the only source of congressional power, and must, therefore, be strictly construed, while a grant of power by the State Constitution to the legislature, being merely declaratory of power already possessed by it, is to be liberally construed in doubtful cases, and the courts should resolve all doubt in favor of the constitutionality of the act. An act of the General Assembly cannot be declared void except where such act *clearly* and *plainly* violates the Constitution. *Brown* v. *Epps*, 91 Va. 726, 21 S. E. 119, 27 L. R. A. 676; *Button* v. *State Corporation Commission*, 105 Va. 636, 54 S. E. 769.

[9-11] The general purpose of the corporation clause of the Virginia Constitution of 1902 was to bring all public service corporations under the control of the police power of the State, and subject to the supervision of the State Corporation Commission. Webster defines "inconsistent" as "incompatible," and says things are incompatible when they cannot coexist, and further that they are inconsistent when they are opposed to each other. When tested by the foregoing rules, we can see no inconsistency or incompatibility between the act of 1914, *supra*, and the Constitution, and are of the opinion that said act is constitutional and valid, and that under its terms the county company is subject to the supervision, regulation and control of the State Corporation Commission. The motion to dismiss was properly overruled.

The second assignment is that the commission erred in requiring the plaintiff company to pay the entire cost of making the physical connection for the interchange of messages, when the patrons of both companies should be made to bear such costs imposed individually and equally on them.

Appellant seems to have misinterpreted the order of the commission, which in terms places the entire cost of making the physical connection and maintaining the same upon the city company.

The objection that the cost of the interchange of messages should be borne individually and equally by the patrons of both companies will be considered under the third assignment.

[12] The third assignment is that the commission adopted a flat rate for the interchange of messages when it should have been a charge per message. The commission found that the interests of the public demanded *free* and uninterrupted intercourse between the citizens of Staunton and the surrounding community. The imposition of a toll rate upon every message would defeat the public interest in this respect and materially increase the cost of operation of both companies.

Upon the record it is clear that the public interests demand that the two companies be compelled to make a physical connection upon terms fair and just to both, whether the expense of making and maintaining the connection and the cost of transmitting the messages should be borne equally by both companies or in a different proportion, and in what proportion, are questions not free from difficulty. Upon this subject no ironclad rule can be laid down. Each case must be determined by the facts and the circumstances surrounding the companies at the time.

The flat rate is usually adopted by telephone com-

panies to cover intercommunication among their local subscribers, leaving the toll rate to apply to messages going beyond their local lines. If two local companies are physically connected, we can see no valid objection to applying the flat rate to the local 'phones of both companies.

[13] The statute directs the commission, in requiring the physical connection of two companies, to have regard to the interests of the companies to be affected thereby as well as the effect upon their ability to render the best service to the public. In fixing the terms and conditions upon which the physical connection shall be made, some credit should be given for the difference in amount of capital invested in the construction and equipment of the two plants. The equipment of the city company is the best, its lines being composed of metalic return circuits, while that of the county company is mostly of a cheaper grade, many of its lines being composed of grounded single wires. The capital invested in the city company is largely in excess of that invested in the county company.

The connection as ordered will give to the patrons of the county company free communication with all of the 'phones of the city company in and near Staunton, and long distance connection with the country at large, neither of which they now have, and for which they can well afford to pay one dollar per annum per 'phone. The result will be increased efficiency in the service rendered by the county company. That the patrons of the county company are probably willing to pay for this improved service is evidenced by the fact that over 200 out of about a thousand telephone holders have either built metallic circuits or patronize the metallic circuits upon which the city exchange assumed the whole responsibility for operation and maintenance at a cost of $3 per station per annum.

By the connection the city company will acquire the advantage of complete and uninterrupted communication for its patrons over the 'phones on the country lines and of an increase in tolls on long distance messages originating on these lines.

. [14] The commission, in its opinion by Forward, commissioner, says: "Roughly speaking one dollar of the two dollar payment per station to be made by the county company represents the expense of building and maintaining the trunk lines (estimated at twenty) between the two exchanges, all of which expense the commission is placing on the city company. The other toll represents the additional cost of giving the service in the exchange."

If one dollar per annum allowed for expense of building and upkeep of the trunk lines should prove to be more than necessary for that purpose, we are of opinion that the excess should be refunded to the county company. The decision of the commission is *prima facie* correct, and we find nothing in the record to satisfy us that the judgment complained of is erroneous, except in the respect just indicated. We shall amend said order and judgment by changing the last paragraph thereof so as to read as follows:

"It is further ordered that the Augusta County Farmers Mutual Telephone Company shall pay to the Chesapeake and Potomac Telephone Company of Virginia two dollars per annum for each station on its line, one dollar of which shall cover the additional cost of giving service in the exchange, and the remaining one dollar, or so much thereof as may be necessary, shall be used to reimburse the city company for the amounts expended by it in erecting and maintaining the necessary trunk lines between the two exchanges, as aforesaid, said trunk lines to be and remain the property of said

20

city company. And it appearing probable that the one dollar last aforesaid will be more than sufficient to cover the expenses of such building and maintenance of trunk lines, it is further ordered that the city company shall keep an accurate account of the expenses incurred in such building and maintenance and of the amounts received each year by it from the county company; and when the one dollar collected for building and maintaining the trunk lines, as aforesaid, shall aggregate a sum sufficient to pay the amount expended in the construction and maintenance of said trunk lines, with interest to the date of payment thereof, the city company shall, at the end of each year thereafter, and after deducting from one-half of the entire amount collected from the county company for each year, the sums expended by the city company during the preceding year in maintaining said trunk lines, as aforesaid, refund the residue of said one-half, if any, to the said county company.

Upon the whole case, the order and judgment of the commission, with the exception stated, is just and reasonable, and amended, as aforesaid, will be affirmed.

*Amended and affirmed.*