## Richmond

# THOMAS E. MOORE, JR. v. NELLIE H. MOORE

January 13, 1978.

Record No. 761083.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*George S. Cummins* for appellant.

No brief or argument for appellee.

COMPTON, J., delivered the opinion of the Court.

In this divorce suit, the defendant-husband appeals from a decree of the trial court which permitted the plaintiff-wife to voluntarily dismiss the proceeding over the husband's objection.

The chronology is important. In May of 1975, appellee Nellie H. Moore, a resident of Fairfax County, filed her bill of complaint in the northern Virginia court below against appellant Thomas E. Moore, Jr., who lived in the town of Blackstone in the southern part of the Commonwealth. She alleged the parties had last cohabited in Fairfax County and that they had lived separate and apart without cohabitation and without interruption for a period of more than two years. She sought a divorce from the bonds of matrimony, but asked for no ancillary relief.

The husband was duly served with process and filed a timely answer, by counsel, admitting the allegations of the bill. He averred that, except for the merits of the divorce, there were no issues for the court to adjudicate. He asked that he not be required to pay the wife's counsel fees or costs.

Within two weeks after the answer was filed, the chancellor referred the cause to a commissioner in chancery. The decree of reference, endorsed by both attorneys, directed the commissioner to inquire and report on the questions of jurisdiction, whether the wife was entitled to the relief prayed for, and any other subject "which may appear pertinent to this cause."

One month later, on July 9, 1975, the plaintiff's depositions were taken in the commissioner's Fairfax office, upon timely notice, at which time the wife and her daughter testified. The husband and his attorney did not appear at the hearing, pursuant to a prior understanding between counsel. The

attorneys had also agreed that the husband would not be liable for any of the wife's counsel fees or court costs.

Approximately three months after the hearing, the commissioner's report was filed in the clerk's office of the court below, after due notice was given to both counsel. The commissioner reported that jurisdiction had been established by the evidence, that the ground for the divorce had been proven, and that "[t]here appear to be no property rights and matters of support to be determined by the Court." He recommended that the wife be granted the divorce based on the parties' two-year separation.

The suit then remained dormant for approximately six months until April 2, 1976, when the husband's attorney wrote the chancellor asking that a final decree be entered and asserting that during the six-month period the wife's attorney had refused to respond to his letters and telephone calls about the suit. The attorney enclosed a draft of a decree, endorsed only by him, providing for an absolute divorce to the wife on the ground alleged in the bill.

Within a week thereafter, the wife, by counsel, filed a motion to "dismiss" the cause upon the ground "that she no longer wish[ed] to pursue the matter." A letter to the chancellor from the wife's attorney accompanied the motion. Counsel denied that he had failed to communicate with his adversary, asserting that during the previous October he had notified the husband's attorney that he would not seek entry of a final decree because his attorney's fee had not been paid by the wife. In the letter, counsel for the wife also stated he had just been "instructed by Mrs. Moore to move the Court to dismiss the case."

The husband, by counsel, then filed a motion seeking a hearing on the wife's request for dismissal and also asked to be heard on his "application" for entry of a final divorce decree, apparently referring to the letter of April 2.

On April 23, 1976, following oral argument of counsel, the trial court entered the order appealed from which stated, in part:

"It appearing to the Court that the Complainant is desirous of dismissing her Bill of Complaint; it is therefore

"Ordered and adjudged that the Bill of Complaint be, and hereby is, dismissed."

The order was endorsed by the wife and her attorney as: "We ask for this".

The question presented is whether the chancellor erred in permitting the plaintiff to dismiss the suit.

The husband relies on former Code § 8-220 (1957 Repl. Vol.), which was in effect at the time of the proceedings below [1] and which provided in pertinent part:

"A party shall not be allowed to suffer a nonsuit unless he do so . . . before the suit or action has been submitted to the court for decision . . . ."

The husband contends that the wife was prohibited from voluntarily dismissing her action because, prior to the filing of the wife's motion to dismiss, the suit had been finally "submitted" to the chancellor for a ruling. Defendant says that by requesting entry of a final divorce decree, he had "already conclusively committed himself to a decision of the Court on the determinative issue." He argues that the cause "was tantamount to being under advisement, in a sense", thus "precluding the arbitrary taking of a non-suit." The argument concludes with the observations that the "only jurisdiction" for the suit is in the court below, located "a 260-mile return trip distance" from defendant's home in Blackstone; that the cause "had been in the court and counsel's hands for 11 months"; that the commissioner had filed his report recommending the granting of a divorce; that additional "legal expense" and court costs caused by further litigation would be "oppressive" to the husband; and that dismissal is prejudicial to "defendant's right and desire to remove from his solely-owned real estate the cloud of an estranged wife's inchoate dower." [2] We do not agree with the husband's contentions.

This court has not recently considered the procedure to be followed in equity for voluntary dismissal of a pending suit. The evolution of the procedure in chancery is tied to the development of the nonsuit rule at law.

One hundred and eighty-eight years ago, the General Assembly adopted the first nonsuit statute, which applied only

[1] Now, with changes, Code § 8.01-380(A), effective October 1, 1977.

[2] Apparently, the husband owned real estate in Blackstone in which the wife had a dower interest. See Code § 64.1-19, amended effective July 1, 1977.

to actions at law tried by jury. Section 10 of "*An act concerning jeofails and certain proceedings in civil cases*" provided:

"Every person desirous of suffering a nonsuit on trial, shall be barred therefrom, unless he do so before the jury retire from the bar." Acts 1789, ch. 28.

The statute remained substantially unchanged until 1932 when it was amended and reenacted to provide:

"A party shall not be allowed to suffer a non-suit, unless he do so before the jury retire from the bar. And after a non-suit no new proceeding on the same cause of action shall be had in any court other than that in which the non-suit was taken, unless that court is without jurisdiction, or not a proper venue, or other good cause be shown for proceeding in another court." Acts 1932, ch. 30.

In 1954, the first sentence of the statute (then codified as Code § 8-220) was amended and the language pertinent to this case was added as follows:

"A party shall not be allowed to suffer a nonsuit unless he do so before the jury retire from the bar *or before the suit or action has been submitted to the court for decision or before a motion to strike the evidence has been sustained by the court.*" Acts 1954, ch. 333 at 417.

█ Prior to the 1954 amendment, there was no statutory equivalent to § 8-220 governing dismissal procedure in chancery. So Virginia followed established English chancery practice that a complainant in a suit in equity was *dominus litis*, and generally had the absolute right to dismiss the suit at any time before final decree unless affirmative rights of the defendant or others had attached. *Patterson* v. *Old Dominion Trust Co.*, 139 Va. 246, 255-56, 123 S.E. 549, 551 (1924); *Commonwealth* v. *Staunton Mut. Tel. Co.*, 134 Va. 291, 298, 114 S.E. 600, 602 (1922). The injury which would result to a defendant must have been of a character that adversely affected some substantial right concerning his defenses, " 'and not the mere ordinary inconveniences of double litigation, which in the eye of the law would be compensated by costs.' " *Kemper* v. *Calhoun*, 111 Va. 428, 431, 69 S.E. 358, 359 (1910).

But with inclusion in the 1954 amendment of the word "suit", a term indigenous to chancery practice, the General Assembly changed the existing equity general rule and provided for a voluntary dismissal as a matter of right only up to the time the suit had been "submitted" to the chancellor for decision. Hence, in a nonjury trial, at law or in equity (in which no counterclaim or cross-claim has been filed[3]), a nonsuit or dismissal without prejudice may not occur as a matter of right after the "suit or action has been submitted to the court for decision".[4]

The critical inquiry in this proceeding then becomes: Had this divorce suit been "submitted" to the chancellor for decision, within the meaning of the statute, at the time the wife filed her motion to dismiss? We think not.

Certainly the mere filing by the commissioner of his report, without more, under Virginia equity practice does not amount to a "submission" of the cause to the trial court for decision. Such a report may repose in the file in the clerk's office for many months for any number of reasons before the cause is brought to the attention of the chancellor for adjudication. Moreover, and contrary to the husband's contention, the unilateral act of this defendant of forwarding to the court a sketch for a decree is not equivalent to a "submission" in the statutory context.[5]

For a "submission" to have occurred under the procedural circumstances of this suit, in which both litigants were represented by counsel who had filed pleadings in the cause, it was necessary for the parties, by counsel, to have *both* yielded the issues to the court for consideration and decision. This could have been accomplished either as the result of oral or written argument, formal notice and motion, or by tendering a jointly

---

[3] See former Code § 8-244 (1957 Repl. Vol.) and present Code § 8.01-380(C).

[4] The chancery classicist may observe that it is technically incorrect to refer to a dismissal in equity as a "nonsuit", that term being associated only with actions at law. *See, e.g.*, E. Meade, Lile's Equity Pleading and Practice § 273 (3d ed. 1952); *Case* v. *Case*, 243 S.C. 447, 449-50, 134 S.E.2d 394, 395 (1964). But the General Assembly in the 1954 amendment obviously intended the statutory term "nonsuit" to be used in a comprehensive sense (*i.e.*, voluntary termination by the plaintiff of pending litigation not precluding a later lawsuit upon the same cause of action), whether it be a nonsuit at law or a dismissal without prejudice in equity.

This same comprehensive interpretation of the term has been carried forward to the new nonsuit statute. *See* Code §§ 8.01-380 (A) and 8.01-2(1).

[5] Caveat. We are not dealing here with the merger of a divorce from bed and board into a divorce from the bonds of matrimony under Code § 20-121, which authorizes unilateral action for the purpose of merger.

endorsed sketch for a decree (or in the case of disagreement over the form, two separate drafts upon notice and motion). None of these steps had taken place at the time the wife's motion to dismiss was filed and, consequently, under the statute the cause had not been "submitted" and the plaintiff had an absolute right to a voluntary dismissal.

We likewise reject the husband's corollary argument that the trial court "abused its discretion" in failing to grant the wife a "no fault" divorce upon the husband's "application" therefor. He points out that Code § 20-91(9)(a) provides (emphasis added) that a divorce from the bond of matrimony could be decreed "[o]n the *application* of either party if and when the husband and wife" had been separated for the required statutory period. He says he made "application" in the cause when it was "fully matured and submitted" and thus he was entitled to have the wife awarded a divorce.

Aside from the conclusion, already stated, that the cause had not been "submitted", we also hold that the request by the husband for a decree in favor of the wife did not amount to an "application" under § 20-91(9)(a). For there to be an "application" under this statute, the party applying must himself seek affirmative relief by way of divorce in his favor through an original divorce proceeding or through a cross-bill filed in a pending suit.[6] Here the husband sought to force the wife to obtain a divorce against her wishes. Carried to its logical conclusion in a "contested" divorce case, approval of the procedure employed by this husband would permit the guilty party to force the innocent one to be awarded a merits adjudication of divorce contrary to the innocent party's desires when the guilty party himself had no grounds for a divorce in his favor. This would indeed be a novel development in the law, given the public policy in favor of preserving the marriage.

For these reasons, we find no error in the trial court's ruling. It will consequently be

*Affirmed.*

---

[6] The term "application" is used in a different context in the merger statute, Code § 20-121, which allows the guilty party to move for merger. Under those circumstances, unlike this case, a determination on the merits of the grounds for divorce would have already been made.