## CIRCUIT COURT OF CLARKE COUNTY

Sylvester J. Walker

v.

Gloria E. Walker

May 25, 1990

Case No. (Chancery) 2707

By JUDGE ROBERT K. WOLTZ

 This suit is before the Court on exceptions to the report of the Commissioner in Chancery on the matter of equitable distribution, on motion of the complainant to change the valuation date of the property involved, and also his more recent motion for a nonsuit. The complainant commenced the suit by filing his bill, praying on no-fault grounds for a divorce and praying for equitable distribution pursuant to Code § 20-107.3. The respondent filed an answer and cross-bill praying for divorce on a fault ground and also for equitable distribution.

 Subsequently the commissioner filed a preliminary report on the matter of divorce as a result of which the complainant was awarded a no-fault divorce. Several months later, the commissioner filed a report on equitable distri-

bution. The respondent at first moved to confirm the report, but thereafter both parties took exceptions to it, filed memoranda in support of them, and orally argued their positions. Later by their joint letter, counsel inquired as to when a decision would be rendered by the court. Afterward, the complainant moved for nonsuit to which the respondent objects.

The motion for nonsuit is denied. For one hundred sixty-four years, the nonsuit statute, now § 8.01-380, applied only to law actions. In chancery, the complainant as *dominus litis* could dismiss suit at any time before entry of final decree; but in 1954 the statute was amended to encompass chancery suits as well as law actions. *Moore v. Moore*, 218 Va. 790 (1978). The statute provides that no nonsuit to a cause of action will be allowed absent the consent of an adverse party "who has filed a counter-claim, cross-claim, or third-party claim which arises out of the same transaction or occurrence . . . unless the counterclaim, cross-claim, or third-party claim can remain pending for independent adjudication by the court." Section 8.01-380(C).

Though this statute does not use the term cross-bill, in view of the amendment to include suits in chancery, it is my view that "counterclaim" has become sufficiently generic to include a cross-bill. Therefore, cross-complain-ant's failure to consent to nonsuit is sufficient to deny the motion, as the equitable distribution sought by her cross-bill cannot for the reason stated immediately below "remain pending for independent adjudication."

While a suit encompassing both the issue of divorce and the ancillary issue of equitable distribution can be heard in bifurcated fashion, § 20-107.3(A), those issues are inseparable in substance. Equitable distribution, as § 20-107.3 makes clear, is not a thing in and of itself subject to independent suit but one which is solely incident to divorce. It can have no essence or meaning apart from divorce which is its only raison d'etre. A litigant cannot institute his quest for divorce-cum-equitable distribution and having achieved the first objective, then without consent of his adversary also seeking equitable distribution change course and abandon the chase. To hold otherwise would deny such cross-complainant any right to equitable distribution, for once the suit terminates in divorce

without adjudicating that incident, the possibility of obtaining that relief independently of divorce action is foreclosed, save only in the one instance of a foreign divorce decree under circumstances provided in Section 20-107.3(I).

Finally, the simplest reason to deny the nonsuit is that the matter in the phraseology of § 8.01-380(A) "has been submitted to the court for decision." Not only were exceptions to the commissioner's report filed, but memoranda of law and oral argument were tendered to the court, and counsel jointly requested to know when decision would be forthcoming, a clear admission the parties considered the matter submitted for decision.

As of the time of the evidentiary hearing before the commissioner, the parties stipulated as to the value of the properties involved. Months later after the filing of the commissioner's report and the filing of exceptions by both parties to that report, the complainant, asserting a dramatic and substantial increase in the value of the Gainesville property, moved to admit additional evidence to show its increased value.

As originally enacted, § 20-107.3 set no valuation date for marital property. The amendment of 1988 set the date for valuation as the date of the evidentiary hearing absent special circumstances. The commissioner's hearing on equitable distribution, including valuation of property, was held several months before the effective date of the statute, though his report was not field until a few months after that. The motion to reopen the evidence to show the increased value is denied. This amendment affected no vested rights, and its application retroactively is not forbidden for this reason. It affected only procedural matters and therefore may be applied retroactively if that were the intention of the legislature. The intent of that amendment appears to be uniformity in application of the statute to matters of equitable distribution, *see Booth v. Booth*, 7 Va. App. 22 (1988), and is retroactively applied under the circumstances of this case. Even before the amendment, the date of the evidentiary hearing was, in the absence of unusual circumstances, the appropriate date for valuation. *Mitchell v. Mitchell*, 4 Va. App. 113 (1987), and *Wagner v. Wagner*, 4 Va. App. 397 (1987).

Nowhere in case law does it appear that once an evidentiary hearing on valuation has been had, the matter should be reopened for a second hearing on the issue. While such matters as fraud or mistake might justify reopening, the fortuitous increase or decrease in property value does not form a legitimate basis for doing so. Otherwise, lack of finality and uncertainty would result as creations of factors extraneous to the suit itself. In addition, the 1988 amendment to § 20-107.3(A) contemplates that if a date for valuation other than that of the evidentiary hearing is to be used, that date must be one occurring prior to the evidentiary hearing.

Respecting the monetary award itself, the parties limited consideration to three parcels of real estate, the Ingraham Street property in Washington, D.C., the Gainesville property in Prince William County, and the marital residence in Clarke County. No evidence was proffered concerning any other property of the parties. This limitation of consideration was intentional on the part of the litigants. The court is authorized to proceed to determine monetary award in this limited fashion where the parties having opportunity to do so fail to introduce evidence as to other property, *Bowers v. Bowers*, 4 Va. App. 610 (1987), and especially would this be true where the parties purposely declined to introduce such evidence.

In addition to stipulating a number of other factual matters for the purpose of the commissioner's hearing, also stipulated were the net values of the properties: Ingraham Street, $55,305.00, Gainesville $90,000.00, and Clarke County $67,260.00. In his report, the commissioner reviewed the evidence before him and then in determining a monetary award considered under § 20-107.3(D) "the equities and the rights and interests of each party in the marital property" and *seriatim* each of the factors set forth in § 20-107.3(E). As to the Clarke County property, the commissioner found that each was entitled to a monetary award of 50% of its net value or $33,630.00. The parties are now in agreement as to his finding with respect to this jointly owned marital property.

The commissioner found the Ingraham Street property to be separate property of the respondent but nevertheless made a monetary award to the complainant respecting it of $11,000.00 or approximately 20% of its net value. It

was error for the commissioner to make a monetary award to one of the parties out of the separate property of the other. The purpose of the statute in detailing specifically what is separate and what is marital property is to segregate the marital so that monetary award can be made from it. Only as to marital property does § 20-107.3(B) specify that the parties have rights and interests and that those rights and interests are to be considered only in determination of a monetary award. It is silent with regard to any rights and interests of the parties in separate property or any consideration of separate property in determination of a monetary award. Additionally, the report was in error in determining that this property was separate; it should have been classified as marital for reasons below.

The respondent acquired title to this property jointly with her employer before her marriage to the complainant. The employer advanced sums to the respondent to purchase this property, and she repaid him from her earnings. For several years prior to the marriage, the complainant lived with her and from his earnings largely supported her and her children, thus enabling her to devote her earnings to retirement of the indebtedness to the employer who, when he had been paid off after the marriage, conveyed his interest in the property to the respondent.

The commissioner was correct in rejecting the complainant's claim that his contributions before the marriage should be given consideration. In determining the amount of monetary award, the first factor of subsection E deals with "contributions, monetary and non-monetary, of each party to the well-being of the family." The purpose and philosophy of the statute are to recognize a marriage as in effect a *de facto* partnership and upon its dissolution providing for what is analogous to a winding up of the partnership whereby each party receives a fair portion of what was accumulated during the marriage. *Aster v. Gross*, 7 Va. App. 371 (1988); *Williams v. Williams*, 4 Va. App. 19 (1987). Any contribution made by a party to the property of the other party before the partnership is formed cannot in view of the purpose of the statute be given in consideration of the winding up process. Contributions so made are at the risk of the contributor.

Though separate property of the defendant at the time of the marriage, the property subsequently became marital. After marriage the respondent's earnings were by statutory definition marital property, and she used these earnings in the continuing process of acquiring the Ingraham Street realty. Thus she acquired that property in part during the marriage using marital property for the purpose. This resulted in a transmutation of the formerly separate property into marital property, *Smoot v. Smoot*, 233 Va. 435 (1987), even to the extent of transmutation where the co-mingled marital property might be insubstantial. *Lambert v. Lambert*, 6 Va. App. 94 (1988). Though the many factors contained in § 20-107.3 in making a monetary award are difficult to quantify, considering those factors, an award of $10,000.00 to the complainant respecting this property seems more equitable and is made rather than the $11,000.00 found by the commissioner.

Other than the request for more current valuation, the dispute with regard to the Gainesville property is over its classification as marital or separate. In 1983, after the parties had been married approximately thirteen years and approximately three years before their separation, by an instrument titled "Deed of Gift" above the body of the instrument, an aunt of the respondent conveyed this property to her "as her sole and separate equitable estate." If this property were conveyed as a gift to the respondent, then it would be "property acquired during the marriage by . . . gift from a source other than the other party" and qualify at least initially as separate property under § 20-107.3(A)(1)(ii).

The evidence, however, refutes a pure donative intent. The aunt presumably was elderly and impecunious and the property was about to be sold for over $1,300.00 in back real estate taxes. The respondent agreed to pay the taxes and save the property but only on condition that she receive a deed to it. Also, there was a verbal agreement that as soon as the improvement on the property was restored to habitable condition, the aunt would be entitled to occupy the premises. Thus some, though perhaps not full, consideration was given for this property. Further, its renovation was achieved through both monetary and non-monetary contributions of the parties. Consequently, it is marital property, and, on review of the commissioner's

findings, an award of 40% or $36,000.00 to the complainant is unexceptional.

No dispute exists as to the valuation and the 50% monetary award of the Clarke County property. This was the jointly owned marital residence at which the complainant continues to live. Under the statutory factors, it appearing appropriate to do so, pursuant to § 20-107.3(C), the Clarke County property will be ordered transferred to the complainant conditioned on his assumption of the remaining deed of trust indebtedness on this realty and his saving the respondent harmless from that indebtedness.

In summary, a monetary award is made to the complainant in the sum of $79,630.00 of which $33,630.00 is satisfied by transfer to him of the Clarke County property, leaving a balance of $46,000.00. Against this the respondent is entitled to a credit of $475.00 or one-half of the total commissioner's fee paid by her. Finally, the order to preserve the estate previously entered will in the final decree be terminated and made of no further effect.