534

# CIRCUIT COURT OF RICHMOND COUNTY

Cleco Corporation

v.

Virginia Department
of Transportation

Case No. CL04-26

BY JUDGE HARRY T. TALIAFERRO, III

December 30, 2004

This matter came before the Court on plaintiff's Motion for Leave to Amend Cleco Corporation's responses to Requests for Admission Numbers 15 and 16 and the Department of Transportation's Plea in Bar that Cleco's suit should be barred because it failed to file a timely claim under the Code of Virginia and the contract between the parties.

The issue on plaintiff's motion is the discretion of the Court in allowing amendments to responses to requests for admission. The issue on defendant's motion is whether plaintiff's case is barred because its claim was submitted late.

The Court for the reasons hereinafter cited (1) grants Cleco's Motion to Amend its Admissions and (2) denies VDOT's Plea in Bar.

*Brief Summary of Facts*

VDOT and Cleco entered into a contract for proposed bridge repairs to the Downing Bridge over the Rappahannock River ("the Contract"). VDOT Road and Bridge Specifications January 1994 ("RBS") are part of the Contract.

By letter dated March 13, 2003,[1] with supporting documentation, the final estimate for payment (funds due) under the Contract was sent by Kathleen Kent Fox, the acting District Contract Administrator for the Fredericksburg District, to Dennis Motley, the Contract Administration Engineer for VDOT. Copies of these documents were received by Cleco on March 18.

On March 21, the final estimate was returned by Motley to Fox for correction. Fox resubmitted to Motley a second letter with a corrected final voucher and revised final estimate, all dated March 24. The letter stated the error corrected. Copies of these items were received by Cleco on March 26.

Motley generated two letters dated March 21: (1) a letter to Cleco which stated that the "District Administrator has furnished you a copy of the final estimate for the . . . project," that "the estimate has now been processed by the Construction Division and is being submitted to the Fiscal Division for processing," and that Cleco's final payment date "will be *April 18, 2003*, for the purpose of filing claims in accordance with § 105.16 of the [RBS]" (emphasis original) and (2) a letter to Stacy D. McCracken in VDOT's Fiscal Division stating that the final estimate approved by Motley was attached and should be placed in line for payment. After the delay occasioned by Fox's making corrections, the letter dated March 21, from Motley to Cleco was mailed on March 24 or March 25 and received by Cleco on March 28. The letter dated March 21, to McCracken was stamped "Received Fiscal Division March 26, 2003."

Cleco Corporation's written contract claim was placed with United Parcel Service [UPS] on June 17, the sixtieth day after April 18, for overnight delivery. On June 18, UPS delivered Cleco's claim to VDOT and VDOT received it. J. F. Staton, the resident engineer in Warsaw, by letter dated June 20, returned the claim to Cleco unreviewed for the stated reason it was not timely received within sixty days from the final estimate date.

*Cleco's Motion to Amend Admissions*

In response to VDOT's Requests for Admission No. 15 and No. 16, Cleco admitted that on June 18, it submitted its written claim to VDOT and that such claim was not submitted within sixty days after April 18. Cleco's Motion requests leave of court to amend such responses from admitted to denied.

---

[1] Unless otherwise indicated, all dates stated hereinafter occurred in 2003.

The Court agrees that the proper rule for consideration on this Motion is Rule 4:11(b) of the Rules of the Supreme Court of Virginia, which provides that it may be appropriate for the Court to allow an amendment "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits."

Both parties cited *Perel v. Brannan*, 267 Va. 691 (2004) (denial of defendant's motion to change "inadvertent" discovery admission to a denial upheld by Supreme Court which found no abuse of trial court's discretion where motion was made only three days before trial and plaintiff alleged prejudice because he had relied on the admission and was not prepared to present evidence at trial to prove matter admitted). In contrast to *Perel*, the case before this Court has not yet been set for trial and it cannot be argued that we are too close to a trial date. Further, VDOT has not shown prejudice to its defense of this case. It argues: "you could say that VDOT is prejudiced in the sense that we granted a continuance previously in order to accommodate this hearing" (transcript of proceedings of November 2, 2004, page 20). Excerpts from transcript of November 2, 2004, will hereafter be referenced by the letter "T" and number of page. But as shown by the significant preparation through discovery, briefing, and witness subpoenas, both parties were well prepared for the motion hearing on November 23, 2004, on VDOT's Plea in Bar on the primary issue now before this Court, the timeliness of Cleco's claim.

The Court is satisfied that the presentation of the merits of this action will be served by allowing Cleco to amend its response to VDOT's Requests for Admission No. 15 and No. 16 from "admitted" to "denied" and that VDOT will suffer no prejudice in maintaining its defense on the merits by the allowance of such amendment.

The Court grants Cleco's Motion and, by the leave requested, orders that VDOT's Request for Admissions No. 15 and No. 16 be deemed properly denied by Cleco under the Rules of Court without further requirement that Cleco file amended responses.

### *VDOT's Plea in Bar*

VDOT argues Cleco's claim is time barred because it was received by the Warsaw Resident Engineer on June 18, the sixty-first day after April 18, the final estimate date stated in Motley's March 21 letter to Cleco. Va. Code §§ 33.1-386 and 33.1-387 provide that upon completion of a VDOT contract, a contractor who contests his VDOT contract settlement may

within sixty days of the final estimate date submit a written claim to VDOT, that such claims are to be submitted through administrative channels as determined by VDOT, and that the timely submission of a claim is a condition precedent to maintaining an action on the claim. RBS § 105.16 provides that the sixty days for submitting claims runs from the time of the final estimate date which shall be the date set forth in a letter from the construction engineer to the contractor at the time the final estimate is submitted to the fiscal division for vouchering. Cleco advances several arguments in opposition to VDOT's Plea in Bar.

First, Cleco argues that, as demonstrated by its timeline,[2] it was confused by the sequence in which it received information from VDOT. Joey W. Harmon, the President of Cleco, testified that, although he had done "probably hundreds" of VDOT construction projects in over twenty years (T-76&77), he was confused by the VDOT letter and documentation he received. He testified that the March 21 letter from Motley to Cleco which set the April 18 final estimate date could logically only have referred to the earlier March 13 final estimate and not to the later March 24 corrected final estimate because the latter did not exist on March 21 (T-82-84). Harmon testified that he knew the April 18 final payment date was not correct because VDOT had "always given us 28 days from the time they submit the final estimate to the Fiscal Division for voucher" (T-87). He testified that he calculated he had at least twenty-eight days from March 24, the corrected voucher date, to submit his claim (T-84). He had thus self calculated a final estimate date of June 20 or later when on June 17 he placed his claim with UPS for next day delivery to VDOT.

The twenty-eight day period between the date of the submission of the final estimate to the Fiscal Division and the final payment date appears only in the VDOT Claims Manual. Cleco argues that it is entitled to rely upon the Manual and that VDOT violated its own policies by not following the Manual. We find Cleco's reliance on the VDOT Claims Manual to be misplaced. The Manual is an internal VDOT policies and procedures document for the use of its own personnel in handling claims. There is no requirement for such a

---

[2] The timeline is as follows: (1) March 18 Cleco receives copy of March 13 Final Estimate letter from Fox to Motley with supporting documents, (2) March 26 Cleco receives copy of March 24 Final Estimate letter from Fox to Motley with corrected final voucher documentation, and (3) March 28 Cleco receives March 21 letter from Motley stating the Final Estimate date will be April 18.

twenty-eight day period in the Code, the RBS, or the contract. Mr. Harmon's reliance on the Manual was at the peril of his company since he had no legal authority, right, or expectation to set his own final payment estimate date.

Although the March 21 letter from Motley to Cleco was dated before the March 24 corrected final voucher and revised final estimate, there is no question from the record of the Court's hearing that the March 13 final estimate and the March 24 *revised* final estimate reference the same project number and contract number. The latter documentation corrects the first. The second letter specifically states the error corrected. Moreover, Cleco obtained the first and the revised final estimates on March 18 and March 26, well in advance of Cleco's March 28 receipt of the March 21 Motley letter. Cleco had no contractual or statutory right to a twenty-eight day prior notice of the beginning of the sixty day period to submit a claim. As it was, it received a twenty-one day prior notice. The March 21 letter stated without ambiguity that the final payment date "will be *April 18, 2003* (emphasis original) *for the purpose of filing claims in accordance with § 105.16 of the [RBS]*" (emphasis added). It is difficult to think of any language which would have more clearly and unequivocally stated the final estimate date from which according to the Code and RBS the sixty days begins to run. The Court finds that Cleco is entitled to no relief from any loss of claim resulting from not calculating the claim submission date from the April 18 date set forth in the March 21 Motley letter.

Second, Cleco argues that the April 18, 2003, Final Estimate date should be invalidated because VDOT violated the provisions of paragraph 4 of RBS § 105.16 by insisting that Cleco must be in strict compliance with the first sentence of paragraph 4 while ignoring VDOT's own violation of the second sentence. This Court's analysis of the first part of the first sentence is that nothing is added by stating that the contractor may within sixty days from the final estimate submit a written claim. The identical requirement is contained in Va. Code § 33.1-386(A). The second part of the first sentence adds an administrative requirement that an original and three legible copies of a written claim stating the amount the Contractor contends he is owed be submitted. There is no issue before this Court concerning the contractor's monetary claim not being properly submitted in quadruplicate. VDOT is hardly "demanding strict compliance" with the first sentence since Va. Code § 33.1-387 requires submission of the claim within sixty days of the final estimate as a condition precedent to filing a lawsuit. The second sentence in paragraph 4 of RBS § 105.16 requires that the final estimate date be specified in a letter from the construction engineer to the contractor "at the time the final estimate is *submitted* to the Fiscal Division for vouchering" (emphasis added).

According to Motley (T-62&63), his responsibility to submit the final estimate was discharged when on either March 24 or 25 he placed the March 21 forwarding letter to McCracken with the revised final voucher attached in interoffice mail for delivery to the Fiscal Division. The March 21 letter to Cleco was mailed on March 24 or 25 *at the same time* as the letter to the Fiscal Division. The Fiscal Division received its correspondence on March 26, and Cleco received its on March 28.

Cleco argues that VDOT violated the second sentence of paragraph 4 of RBS § 105.16 because the construction engineer's placement of the final estimate in interoffice mail did not constitute submitting it to the Fiscal Division for vouchering at the time VDOT's March 21 letter to Cleco was mailed, while Cleco's placing its claim with UPS for next day delivery to VDOT did constitute a timely submission of the claim on the sixtieth day after the final estimate date. VDOT proffers an equally paradoxical argument by taking precisely the opposite stance, that is its placement of the final voucher in interoffice mail satisfied "submission" to the Fiscal Division, but Cleco's action in placing its claim on the sixtieth day with UPS for next day delivery to VDOT did not.

The resolution of this issue depends upon the meaning of the word "submit" or "submission" as used in Va. Code §§ 33.1-386 and 33.1-387 and RBS § 105.16.

Third, Cleco argues that its claim was timely "submitted" when on the sixtieth day its written claim was placed in the hands of UPS for next day delivery to VDOT. Citing a dictionary definition, Cleco argues that "submit" should be defined as meaning "transmitted" or "sent." The Court's research finds "submit" also defined as "to commit to the discretion or decision of another." *Merrian-Webster's Desk Dictionary*, copyright 1995. Substantially, the same definition appears in *Black's Law Dictionary*, Fourth Edition, 1957. Because § 33.1-386 uses the word "submit" in reference to making a claim and the word "receipt" in reference to the time period within which VDOT must reply, Cleco argues the General Assembly meant the two words to have different meanings. "Receive," Cleco argues, means "to place in possession" and therefore "submit" means something less.

Both parties cite the case of *Holly's, Inc. v. County of Greensville*, 250 Va. 12 (1995) (the county's award of the low bid contract where the low bid was received several minutes after the advertised time deadline for bids to be received was held null and void. The low bidder continuously sat in the bid opening room with the other bidders whose bids were timely received until the county representative entered the room several minutes after the deadline. The Supreme Court held the time fixed for the receipt of the bid was not waivable,

but was a material and formal requirement that must be fulfilled to the letter of the law). *Holly's* turned upon the plain and ordinary meaning of the word "received" as distinguished from the meaning of the word "submitted." *Holly's* never defined "submit" although it certainly implied that a bid was "submitted" where a bidder arrived ten minutes early with bid in hand and continuously stayed in the bid opening room with the other bidders until after the appointed time for receiving bids. The Supreme Court held it was not sufficient merely to submit a bid by such means because the bid must have been received before the advertised time deadline. *Holly's* 250 Va. at 17.

VDOT is authorized by Code to promulgate procedures for submission of claims through proper administration channels. VDOT never promulgated a definition of "submit." The Code requires that claims be submitted to, not received by, VDOT within sixty days. We conclude from *Holly's* that "receive" means actually placing in the hands of the intended recipient. The *Holly's* court in determining the definition of "receive" chose to draw a bright line rule to eliminate ambiguity. We find that the plain and ordinary meaning of "submit" as used in the Code, the RBS and the contract means "transfer," "send," or "proffer for the consideration of another." There may well be less necessity for a bright line rule here because, contrary to being in a bid competition for a contract with others, only one claim not in competition with others is submitted.

This Court finds that VDOT complied with the "letter of the law" as set out in RBS § 105.16 when it *submitted* the final estimate to the Fiscal Division by placing it in interoffice mail one or two days *before* the Fiscal Division received it. If submission occurred on the date the letter got to Fiscal Division, VDOT would have violated RBS § 105.16 because the construction engineer's letter to the contractor setting forth the final estimate date would not have been sent "at the same time the final estimate is submitted to the Fiscal Division for vouchering." We do not differentiate interoffice mail from UPS overnight delivery or any other usual and customary manner of forwarding original documentation from one person or party to another. Fox in her letters of March 13 and March 24 to Motley states "We . . . are submitting . . . documents" and "The attached corrected final voucher is being resubmitted to you." In its own communications, VDOT's use of "submit" refers to documents at the time they are sent, without reference to the time they are received.

We find by the same logic that Cleco complied with the Code and the RBS by submitting its original written claim to VDOT by placing it with UPS on the sixtieth day for next day delivery. In doing so, the Court rejects the

argument that VDOT's receiving the Cleco claim on the sixty-first day constituted submission of the claim on that same day.

March 31, 2005

The Court has reviewed the defendant's Motion for Reconsideration and the arguments and authorities cited therein and the plaintiff's brief in opposition to defendant's Motion for Reconsideration. The Court grants the defendant's Motion for Reconsideration and will reconsider the matter based upon the written arguments made to the Court without further oral argument.

The Court denies the defendant's prayer in its Motion for Reconsideration and affirms its denial of defendant's Plea in Bar.

VDOT argues a definition of "submit" based on judicial interpretation of Va. Code § 8.01-380(A), the nonsuit statute. A nonsuit is the voluntary termination by the plaintiff of pending litigation not precluding a later lawsuit upon the same cause of action. The statute in pertinent part states:

A party shall not be allowed to suffer a nonsuit unless he do so before the jury retire from the bar or before the suit or action has been submitted to the court for decision or before a motion to strike the evidence has been sustained by the court.

Both parties argued *Moore v. Moore*, 218 Va. 790, 240 S.E.2d 535 (1978) (in affirming trial court's grant of nonsuit over defendant's objection, the Supreme Court found that, for a suit to be submitted to a court for decision, opposing counsel must yield the issues to the court for decision and that this had not occurred upon "the mere filing by the commissioner of his report without more" where the report could repose in the clerk's office for months before being brought to the chancellor's attention for action, or by the "unilateral" act of the defendant in sending a sketch order to the court).

The defendant also argued the following cases: *City of Hopewell v. Cogar*, 237 Va. 264, 377 S.E.2d 385 (1989) (after a summary judgment motion hearing, the trial court denied the plaintiff's nonsuit motion made within the fifteen-day period given to each party to submit simultaneous memoranda, the Supreme Court reversed the trial court's denial of a nonsuit because the matter was not yielded to the court for decision where further argument in memoranda was anticipated); *Atkins v. Rice*, 266 Va. 328, 585 S.E.2d 550 (2003) (noting that the trial court was deciding a procedural motion to dismiss for failure to timely serve process, not a motion to strike, the Supreme Court reversed the trial court's grant of a nonsuit on the plaintiff's

motion made in the midst of the court's explanation before its ruling, holding that the matter had been submitted for decision because there was no contemplation that either counsel could further argue orally or file written memoranda); and *Wells v. Lorcom House Condo. Council*, 237 Va. 247, 377 S.E.2d 381 (1989) (after hearing oral argument on the defendant's motions any one of which was dispositive if the court ruled in the defendant's favor, the plaintiff first wrote the trial judge asking when a ruling might be expected then made a motion to nonsuit, which the trial court granted over the defendant's objection, the Supreme Court reversed because neither the trial judge nor the attorneys contemplated any further presentation, such as briefing, as necessary to decide the issues and, therefore, the matter had been submitted to the court.)

The cases argued all interpret the word "submitted" as applied in nonsuit motions in varying factual circumstances. Our suit is distinguishable from *Moore* and the other cited cases. Cleco's submission did not take place within a trial. There is no issue involving a nonsuit. The submission requiring no action in concert with VDOT. There was no third party charged with making a decision involved.

VDOT argues that Cleco's claim was not submitted because "something remained to be done" before the action properly could have been decided by VDOT, namely the "delivery" of the claim to VDOT. Delivery is argued to be necessary in order for the matter to be "brought to the attention" of the defendant. The next required act, however, in accordance with Virginia Code §§ 33.1-386 and 33.1-387 was VDOT's response to Cleco within sixty days of receipt, not delivery, of the claim.

The Court disagrees with VDOT's argument because, as previously held, placing the claim for overnight delivery within the requisite sixty days constitutes an end to all action required by the plaintiff to secure its claim under the applicable statutes and the RBS.