PRESENT: Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and
Poff and Compton, S.JJ.

INTERIM PERSONNEL OF
CENTRAL VIRGINIA, INC.

v.   Record No. 010796

MILDRED LYNN MESSER, ET AL.                OPINION BY
                                   SENIOR JUSTICE A. CHRISTIAN COMPTON
ALUMNI ASSOCIATION OF THE               March 1, 2002
UNIVERSITY OF VIRGINIA

v.   Record No. 010799

MILDRED LYNN MESSER


         FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                    Edward L. Hogshire, Judge

     In these appeals arising from a single action alleging

negligent hiring, the dispositive question is whether the trial

court erred in ruling that foreseeability was a jury issue.

     In November 1998, plaintiff Mildred Lynn Messer was injured

when the vehicle she was operating near Charlottesville was

struck from the rear.  The collision was caused by defendant

Ricky Edward East, who was intoxicated and was negligently

operating a pickup truck that he had stolen from defendant

Alumni Association of the University of Virginia.

     Subsequently, the plaintiff filed this tort action seeking

recovery for her injuries against East, the Association, and

Interim Personnel of Central Virginia, Inc.  Interim was a

staffing agency that provided temporary personnel to businesses

needing light industrial, administrative, and clerical support employees. The only theory of liability against the Association and Interim presented to the jury was negligent hiring.

In a September 2000 trial, the jury found in favor of the plaintiff against all defendants, fixing her compensatory damages at $100,000, plus interest. The jury also awarded punitive damages of $25,000 against East.

Overruling motions of the Association and Interim to set the verdict aside, the trial court entered judgment on the verdict. We awarded separate appeals to the Association and Interim; the judgment against East has become final.

There are very few conflicts in the evidence. If there are disputed facts, we shall consider them in the light most favorable to the plaintiff, according to settled rules of appellate procedure.

At the time of the accident, East was employed by Interim and assigned to the Association to fill the position of "Part-time Building Assistant" at the University's Alumni Hall. According to a job description furnished to Interim by the Association in March 1998, when the Association was seeking a temporary worker, the duties of such an assistant included helping the building supervisor about three hours a day with mail processing and packaging "and delivery to the Post Office." The job description stated that possession of "a valid Virginia

driver's license" was required. At all times relevant to this case, East did not have a valid operator's permit.

East had been convicted of driving under the influence of intoxicants (DUI) in May 1990 and in October 1995. Due to those convictions, his license to operate a motor vehicle was suspended. Also, he failed to pay the fines assessed and failed to attend ordered alcohol counseling. In January 1996, the Department of Motor Vehicles (DMV) declared him to be an habitual offender.

In December 1996, East began working for and through Interim after he completed an Interim application form. On the form, East misrepresented that he possessed a valid "Class A" driver's license. At the time, East was interviewed and was given "a series of basic skill tests." Then Interim "check[ed] his references," and employed him, assigning him to various employers.

After some time, East left Interim's employ. He returned to work for the agency in September 1998, when he completed another application form that sought current information. Responding to the question on the nine-page form: "Have you ever been convicted of a felony, misdemeanor or any offense other than a minor traffic violation?", East wrote, "child support!" Also, he listed among his work skills "Chauffer" (sic) and "Driver Class A."

During the relevant time period, Interim did not "check criminal background," or request applicants physically to produce a valid operator's license. Also, it "did not request a copy of East's DMV record."

In March 1998, an official of the Association had contacted Interim's Sales Manager to discuss filling the part-time building assistant position, presenting the job description to him. Later, in September 1998, the Association official asked Interim to send an individual who met the job qualifications. Interim's Sales Manager responded that East was qualified, stating that East "had a good driving record." Interim had found East to be a good employee; he had not been involved "in any type of accidents," had never "shown up drunk on the job," and had generated no complaints "from any employer about his activities while working."

On September 22, 1998, Interim sent East to be interviewed by the Association official. Under the arrangement with Interim, the Association had the right to accept or reject East. During the interview, the official discussed with East the hours to be worked and his duties, handing him a copy of the job description. East said that he could perform the duties. The official did not ask East to produce a driver's license, relying on Interim to verify that he was a licensed driver. No one at the Association asked East if he possessed a valid driver's

4

license.  East admitted he concealed from Interim and the Association that he did not have an operator's license because he wanted a job.

The Association accepted East as a worker.  During the two months before the accident, the Association found East to be "an excellent employee."  His work included use of a copying machine, a mailing machine, and recycling equipment.  His driving duties involved only travel to and from a post office "less than a mile" from the Association building.

On November 25, 1998, the Wednesday of Thanksgiving week, East was told to keep a key to the Association building because his supervisor was on vacation.  He was instructed to lock the building before the holiday and to reopen it the following Saturday.  The Association was closed for business on November 25 and November 26, the day of the accident.

Because he had access to the building, East was able to procure a key to the truck he routinely operated.  On Wednesday, East, age 40, "took the truck" without permission, traveled to Richmond, and returned to his Charlottesville home on Friday, when he began drinking beer and "riding around" in the truck. During the day, he consumed about eight quarts of beer, and eventually drove the truck into the rear of a stopped vehicle that struck the rear of the plaintiff's stopped vehicle. Subsequently, East pled guilty to petit larceny of the truck.

At trial, the court submitted the case against Interim and the Association to the jury with instructions on negligence, proximate cause, negligent hiring, foreseeability, and damages. On appeal, the plaintiff, referring to the established elements of the independent tort of negligent hiring, contends she presented ample evidence to support "each element" against both Interim and the Association.

As we recently have stated, the cause of action for negligent hiring "is based on the principle that one who conducts an activity through employees is subject to liability for harm resulting from the employer's conduct if the employer is negligent in the hiring of an improper person in work involving an unreasonable risk of harm to others." Southeast Apartments Mgmt. v. Jackman, 257 Va. 256, 260, 513 S.E.2d 395, 397 (1999).

Liability for negligent hiring is based upon an employer's failure to exercise reasonable care in placing an individual with known propensities, or propensities that should have been discovered by reasonable investigation, in an employment position in which, due to the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others. Id. Mere proof of the failure to investigate a potential employee's background is not sufficient to establish an employer's liability for negligent hiring.

6

Majorana v. Crown Cent. Petroleum, 260 Va. 521, 531, 539 S.E.2d 426, 431 (2000).

The tort of negligent hiring is distinct from tort liability predicated upon the doctrine of respondeat superior; the two theories differ in focus. J... v. Victory Tabernacle Baptist Church, 236 Va. 206, 211, 372 S.E.2d 391, 394 (1988). Under the latter, an employer is vicariously liable for an employee's acts committed within the scope of employment. In contrast, the tort of negligent hiring is a doctrine of primary liability; the employer is principally liable for placing an unfit individual in an employment situation that involves an unreasonable risk of harm to others. Negligent hiring enables a plaintiff to recover in circumstances when respondeat superior's "scope of employment" limitation protects employers from liability. Id.

The plaintiff contends that East had a known propensity for driving while intoxicated, or that this propensity should have been discovered by Interim and the Association had they performed reasonable investigation. She argues "there were facts that should have put Interim on notice that sending East to [the Association] might reasonably be a threat to the public."

The plaintiff also contends that the Association's claim of reliance on Interim "ignores the evidence of [the Association's]

7

active negligence in giving East the job." She says the Association "failed to conduct the most basic of investigations, requiring . . . proof East met the job requirement."

Additionally, the plaintiff argues that Interim and the Association "placed East in an employment position in which, because of the circumstances of the employment, it should have been reasonably foreseeable that East posed a threat of injury to others." According to the plaintiff, it was foreseeable from Interim's standpoint that the Association would hire East, that he would drive for the Association, that he would have access to a vehicle, that he would take the vehicle, that he would drink and drive, and that he would injure someone while driving drunk.

The plaintiff also argues that from the Association's standpoint "East was expected to drive a pickup truck as part of his job. He posed a risk to the motoring public every time he left Alumni Hall to go to the post office. He posed a special risk to the public when he was left in control of Alumni Hall over the Thanksgiving weekend; and, [the Association] knew it."

We do not agree with the plaintiff's contentions. The evidence is clear that neither Interim nor the Association had actual knowledge of East's propensities for operating a motor vehicle without a valid operator's license, for failing to obey court orders to pay fines and to attend counseling, and for

8

driving while intoxicated. He intentionally concealed those facts from them.

The question then becomes whether those defendants should have discovered these propensities by reasonable investigation, given the fact that the position to be filled only required a three-hour daily commitment in which clerical and light labor duties were to be performed, incidentally requiring driving only a short distance to and from a post office. For the purpose of this discussion, however, we will assume, but not decide, that both Interim and the Association should have discovered East's propensities in the exercise of reasonable care.

Nevertheless, we hold that the plaintiff failed, as a matter of law, to establish that, because of the circumstances of the employment, it should have been foreseeable that East posed a threat of injury to others.

Generally, in order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that the injury should have been foreseen in the light of the attending circumstances. Scott v. Simms, 188 Va. 808, 817, 51 S.E.2d 250, 253 (1949).

Negligence carries with it liability for consequences that, in view of the circumstances, could reasonably have been anticipated by a prudent person, but not for casualties which,

9

though possible, were wholly improbable. A party is not charged with foreseeing that which could not be expected to happen. Norfolk Shipbuilding & Drydock Co. v. Scovel, 240 Va. 472, 475, 397 S.E.2d 884, 885 (1990), cert. denied, 499 U.S. 948 (1991). However, the precise injury need not be foreseen by a defendant. It is sufficient that an ordinary, prudent person ought, under the circumstances, to have foreseen that an injury might probably (not possibly) result from the negligent act. Blondel v. Hays, 241 Va. 467, 475, 403 S.E.2d 340, 345 (1991).

In the present case, the mere fact that East had been convicted twice of DUI, had failed to pay fines or attend counseling, and had been declared an habitual offender, would not place a reasonable employer on notice or make it foreseeable that East would steal a truck, operate the stolen vehicle during non-business hours for his own frolic, and cause an accident on the open highway distant from the environs of his job.

According to the uncontradicted evidence, East's employment history showed he had been a model employee, never had consumed alcohol at work or reported for work intoxicated, never had been in any motor vehicle accidents, never had taken any item from any employer without permission, and had no record of theft. In sum, it was not Interim's placement of East, or his subsequent acceptance for work at the Association, which was a proximate cause of the plaintiff's injuries.

10

Consequently, we conclude that the trial court erred in ruling that foreseeability was a jury issue, and in refusing to sustain Interim's and the Association's respective motions to set the verdict aside. Thus, that portion of the January 16, 2001 order entering judgment in favor of the plaintiff against Interim and the Association will be vacated, and final judgment will be entered here in favor of those defendants.

Reversed and final judgment.