## CIRCUIT COURT OF THE CITY OF NORFOLK

Charles Fulcher

    v.

Virginia Electric
and Power Co. et al.

October 9, 2002

Case No. (Law) L02-09

BY JUDGE CHARLES E. POSTON

    Today the Court grants the motions for summary judgment submitted on behalf of Defendants Central Locating Service ("CLS") and NoCuts, Inc. ("NoCuts") and dismisses the Plaintiff's actions against them. In addition, the Court grants Defendant Dominion Virginia Power's ("Dominion") motion for summary judgment in part, dismissing the count against Dominion for failure to mark the power line. In keeping with familiar principles, the facts are viewed in the light most favorable to the Plaintiff.

*Facts*

On or about April 4, 2000, the Plaintiff, an employee of J. M. Holt & Sons, Inc., installed underground telephone cable at the boat dock at Harbour Watch in Chesapeake, Virginia. *Second Am. Mot. for J. ("Mot. for J.")* ¶ 5; *Pl.'s Resp. to Def. VEPCO's Second Req. for Admis. ("Admis.")* ¶ 33. During his excavation, the Plaintiff discovered a power line. *Mot. for J.* at ¶ 8; *Ex.* D-1 at ¶ 1. The Plaintiff admitted that he knew the line was a Dominion power line. *Ex.* D-1 at ¶ 43. The Plaintiff's training taught him that, whenever he found an underground power line and could not determine whether it was live, he should leave the power line alone. *Id.* at ¶ 15.

After discovering the power line, the Plaintiff did not contact Miss Utility, CLS, or Dominion to ask about the power line. *Id.* at ¶¶ 12-14. The Plaintiff did, however, talk to an employee of W. B. Meredith, II, Inc. ("Meredith"), who told him that the power line had been deactivated. The Plaintiff asserts that the comments made by Meredith's employees and agents "induced [him] to cut the line." *Mot. for J.* ¶ 21. The Plaintiff never contacted Dominion, CLS, or Miss Utility to determine whether the line was energized. *Ex.* D-1 at ¶¶ 12-14. Less than an hour passed between the time the Plaintiff discovered the line and the time he cut it. *Admis.* ¶ 35. The Plaintiff knew before he cut the line that, if it were live, he could be injured by cutting it. *Id.* at ¶ 44. He also knew that, according to industry standards, power lines should not be cut until confirmation of their inactivity. *Id.* at ¶¶ 5-6. Despite this knowledge, the Plaintiff, while not wearing protective gloves, intentionally and voluntarily cut the line with cable cutters. *Ex.* D-1 at ¶ 2; *Admis.* ¶ 4. The Plaintiff suffered injuries when he severed the power line. *Mot. for J.,* ¶¶ 11, 16, 22. The Plaintiff sued Dominion, CLS, and NoCuts, Inc. ("NoCuts"), a predecessor to CLS, for negligence. *Transcript of Proceedings Hr'g on Mot. for Summ. J. ("Tr.")* at 23; *see generally Mot. for J.* The Plaintiff also sued Meredith originally but later nonsuited the cause of action as to that defendant.

The Defendants Dominion, CLS, and NoCuts rely on five theories in their motions for summary judgment. First, the Defendants argue that, even if their behavior were negligent, their behavior was not the proximate cause of the Plaintiff's injury. Second, they assert that the Plaintiff failed to comply with the Virginia Underground Utilities Damage Prevention Act ("VUUDPA") and illegally severed a power line, thus barring the Plaintiff's action due to illegality. Third, the Defendants aver that the Plaintiff's recovery is barred by his contributory negligence. Fourth, the Defendants contend that the Plaintiff assumed the risk that the line might be live when he failed to contact the

proper agencies. Fifth, the Defendants allege that the Virginia Workers' Compensation Act bars the Plaintiff's action.

## Summary Judgment

The Rules of the Virginia Supreme Court provide that "summary judgment shall not be entered if any material fact is genuinely in dispute." Va. Sup. Ct. R. 3:18. When a court considers a motion for summary judgment, "the court must rule, as a matter of law, on the sufficiency of the evidence; it [should] not weigh the evidence as a finder of fact." *Piland Corp. v. League Constr. Co.*, 238 Va. 187, 189, 380 S.E.2d 652 (1989). The deciding court may grant summary judgment only if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *See e.g., Freeman v. Norfolk*, 221 Va. 57, 60, 266 S.E.2d 885 (1980).

## Unresolved Facts

Several essential facts required for granting complete summary judgment are unresolved. First, the relationship between the Plaintiff and Meredith is unclear. The undisputed facts indicate that "at the time [the Plaintiff] cut the line, [he was] as employee of J. M. Holt & Sons, Inc."; however, they fail to show what, if any, relationship Holt had with Meredith. *Admis.* ¶ 33. Counsel for Dominion stated that Meredith was the general contractor and it "sub-contracted with the plaintiff's employer, a company called J. M. Holt & Sons to install telephone cable underneath the ground to lead to those buildings." *Tr.* at 6. Dominion also attached an exhibit to its motion for summary judgment entitled *Defendant, W. B. Meredith, II, Inc.'s Answers to Interrogatories and Requests for Production of Documents* ("Meredith's Answers"). In this exhibit, Meredith states that it "did not have any relationship with J. M. Holt and Company, who was the subcontractor for Verizon; however, [it] did contact Verizon and asked them to supply phone lines and phone service to the area and Verizon contacted J. M. Holt and Son to perform this task." *Meredith's Answers*, ¶ 9. From Meredith's assertion, it had no contractual relationship with Holt, and the only relationship it had with Holt was through its contact with Verizon.

The facts describing the scope of the relationship between Meredith and Dominion are also incomplete. Meredith explained that it "entered into a written agreement with Virginia Electrical Power Company by way of a proposal for them *to supply power* to the site." *Meredith's Answers* ¶ 9

(emphasis added). The counsel for Dominion also asserted that Meredith "subcontracted with Virginia Power *to provide power* into these buildings." *Tr.* at 6 (emphasis added). It is unclear what supplying/providing power entails: whether Dominion merely delivered electricity or also engaged in constructing electrical facilities for Meredith's project.

The conversation the Plaintiff had with Meredith after he discovered the power line is, likewise, in dispute. *Tr.* at 7, 32. The Plaintiff alleges that, after he discovered the power line, "Meredith … falsely told plaintiff that [the line] was abandoned and deactivated as confirmed by one of their employees who cut the line with a Sawsall." *Mot. for J.*, ¶ 20. The Plaintiff also explained that "Meredith, by negligent and false statements of its employees and agents, induced plaintiff to cut the line which proved to be energized with approximately 440 volts of electricity." *Id.* at ¶ 21.

Meredith's Answers recount a more detailed rendition of events. On the date of the incident, Charles Fulcher with J. M. Holt arrived at the scene and asked Rob Sanson if Rob Sanson knew the status of the underground power line near a sidewalk. The plaintiff stated that he wanted to use the conduit/sleeve of Virginia Power Company which was already in existence so he would not have to dig underneath the sidewalk. Rob Sanson informed the plaintiff that, although Rob Sanson knew of other VEPCO wires that may have been abandoned prior to April 2002, that Rob Sanson was unaware whether this specific wire was "abandoned."

In addition, Rob Sanson informed the plaintiff that he would either have to locate the phone line elsewhere or wait for VEPCO to come and inspect the line to give a sign of approval for the line to be cut. Rob told the plaintiff not to cut the VEPCO line because it was VEPCO's property. The plaintiff stated, "I do not want VEPCO to come out here and tell me that they own this power line and they will not let me use the power line whether it is abandoned or not." Rob Sanson told the plaintiff to wait for VEPCO to come out, and then Rob Sanson went to perform other business 150 yards from the site. When Rob Sanson was out of the way, the plaintiff decided on his own to attempt to cut the line. *Meredith's Answers,* ¶ 13.

The Plaintiff, however, denies the assertion that "the only action [he] took to determine whether [the line] was energized was to ask Rob of W. B. Meredith." *Admis.,* ¶ 11. The Plaintiff also denied that "the only representation [he] relied on to tell [him] that [he] could cut the power line was the representation of Rob at W. B. Meredith." *Id.* ¶ 23. The Plaintiff's counsel asserts that, after discovering the line, the Plaintiff "talked to the site superintendent for the general contractor, and … what the plaintiff understood was that the line had been abandoned, that the site supervisor himself had severed the temporary power pole

that they were using on the site connected to this line within a day or so before he discovered it and that it was dead." *Tr.* at 32. The Plaintiff's counsel also indicated that the evidence will show that the Plaintiff "traced this line back from where it had been severed back to ensure that it was, in fact, the line that he had discovered before he attempted to sever the line." *Id.*

## I. *Proximate Cause*

The fact-finder generally decides whether the defendant's conduct was the proximate cause of the plaintiff's injury. *Kimberlin v. P. M. Transport, Inc.*, 264 Va. 261, 266, 563 S.E.2d 665 (2002). This rule changes, however, when reasonable minds could not differ as to the proximate cause issue, and the court may then decide proximate cause as a matter of law. *Id.*

For the defendant's conduct to be the proximate cause of the plaintiff's injury, the plaintiff must prove that the injury was "the natural and probable consequence of the [defendant's conduct] and that the injury should have been foreseen in the light of the attending circumstances." *Interim Pers. of Cent. Va. v. Messer*, 263 Va. 435, 442, 559 S.E.2d 704 (2002). "Probable consequences are to be anticipated and not those which are merely possible." *Wyatt v. Chesapeake & Potomac Tel. Co.*, 153 Va. 470, 479 (1932). A defendant will not be held liable for consequences that are "merely possible, according to occasional experience." *Id.* A defendant will only be held liable for consequences that are probable in light of "ordinary and usual experience." *Id.* "Natural and probable consequences are those which human foresight can foresee, because they happen so frequently that they may be expected to happen again." *Id.*

A defendant is only held liable for "consequences that, in view of the circumstances, could reasonably have been anticipated by a prudent person; however, "[a] party is not charged with foreseeing that which could not be expected to happen." *Messer*, 263 Va. at 442. This assertion does not mean that, for the defendant to be held liable, he should have foreseen or anticipated the exact injury sustained. "In order for negligence to be actionable, a defendant 'need not have anticipated or foreseen the precise injury sustained, but it is sufficient if an ordinarily careful and prudent person ought, under the same or similar circumstances, to have anticipated that an injury might probably [not possibly] result from the negligent acts'." *Norfolk Shipbuilding & Drydock Co. v. Scovel*, 240 Va. 472, 476, 397 S.E.2d 884 (1990) (quoting *New Bay Shore Corp. v. Lewis*, 193 Va. 400, 409, 69 S.E.2d 320 (1952)).

In *Wyatt*, the defendant, a telephone company, in violation of a statute, placed a telephone pole across a ditch next to the street without consent of the

Elizabeth City County Board of Supervisors. 240 Va. at 476. The plaintiff's husband, in an effort to avoid hitting another vehicle, turned his vehicle to the left and ran over the ditch into the telephone pole. *Id.* The plaintiff's husband was not negligent, and had the pole not been there, no accident would have occurred. *Wyatt*, 153 Va. at 476. The Virginia Supreme Court, however, held that the telephone pole's improper location was not the proximate cause of the injury as a matter of law because "no one could in reason have anticipated that [the telephone pole] would be struck by an automobile." 153 Va. at 481-82.

In *Messer*, the plaintiff sued the University of Virginia Alumni Association ("Association") and Interim Personnel of Central Virginia ("Interim") for the negligent hiring of Mr. East. *Interim Pers. of Cent. Va. v. Messer*, 263 Va. 435, 438 (2002). Mr. East worked for the Association processing and delivering mail to the post office. *Id.* He obtained the job through Interim, a temporary employment agency. *Id.* While working for the Association, Mr. East, intoxicated and illegally operating the Association's vehicle, struck the plaintiff's automobile causing the plaintiff injuries. *Id.* Unbeknownst to Interim and the Association, Mr. East had been convicted of two DUIs and his driver's license had been suspended. *Id.* at 438-39. The jury found for the plaintiff, and the trial court denied motions to set aside the verdict. *Id.* at 438. The Virginia Supreme Court held that "the plaintiff failed, as a matter of law, to establish that, because of the circumstances of the employment, it should have been foreseeable that East posed a threat of injury to others." *Interim Pers. of Cent. Va. v. Messer*, 263 Va. 435, 442 (2002). The Court further explained that "the mere fact that East had been convicted twice of DUI, had failed to pay fines or attend counseling, and had been declared a habitual offender *would not place a reasonable employer on notice or make it foreseeable* that East would steal a truck, operate the stolen vehicle during non-business hours for his own frolic, and cause an accident on the open highway distant from the environs of his job." *Id.* The Court held, as a matter of law, that the defendant's conduct was not the proximate cause of the plaintiff's injuries. *Id.*

Assuming that the Defendants in the case at bar engaged in negligent conduct by failing to mark the power line, the Defendants still cannot be held negligent for failure to mark because their conduct does not constitute the proximate cause of the Plaintiff's injury. The Defendants could not have reasonably foreseen that their failure to mark the power line would cause an excavator to sever the line intentionally and voluntarily with cable cutters after the excavator discovered the line. Had the Plaintiff merely accidentally severed the line before discovering it, the Defendants' failure to mark would surely be the proximate cause of the Plaintiff's injury, but, in this case, the

Plaintiff's intentional severing of the line upon discovery constituted a superseding cause. "To be a superseding cause, whether intelligent or not, it must so entirely supersede the operation of the defendant's negligence, that it alone, without the defendant's contributing negligence thereto in the slightest, produces the injury." *Scott v. Simms*, 188 Va. 808, 51 S.E.2d 250 (1949). In this case, even if the Defendants had marked the lines, plaintiff's intentional act of cutting the cable would have caused his injury. The Defendants could not have reasonably foreseen that an excavator, upon discovery of a line, would intentionally cut it without contacting Dominion, CLS, or Miss Utility to confirm the line's status, especially when the Plaintiff knew that, and according to industry practice, he should assume the line was electrified until it was confirmed dead.

For these reasons, the Court, holds as a matter of law, that the Defendants' failure to mark the power line was not the proximate cause of the Plaintiff's injuries; therefore, the Court grants the Defendants' motions for summary judgment as they apply to the Plaintiff's contention that the Defendants' failure to mark the power line proximately caused the Plaintiff's injuries. The actions against CLS and NoCuts are dismissed, and the claim dealing with failure to mark filed against Dominion is also dismissed. This ruling, however, does not affect the counts against Dominion that it "negligently failed to deactivate and abandon" the power line, nor does it affect the claim that Dominion "negligently and incorrectly informed defendant NoCuts, defendant CLS, and defendant Meredith that the line found by the plaintiff was abandoned." *Mot. for J.*, ¶ 8.

If Dominion did negligently fail to deactivate the power line and if it negligently and incorrectly informed others that the line was abandoned, reasonable minds could differ as to whether Dominion's conduct constituted the proximate cause of the Plaintiff's injury. Dominion could have reasonably foreseen that its negligent acts could cause an excavator to sever the line intentionally and voluntarily with cable cutters. For this reason, the issue of proximate cause as it pertains to these counts of negligence is best left for the trier of fact.

## II. *Illegality*

The Defendants claim that the Plaintiff is barred from recovery because the Plaintiff's own illegal conduct caused the Plaintiff's damages. The Defendants support this contention by citing *Molchon v. Tyler*, a Virginia Supreme Court case that stated that "a plaintiff may not recover for an injury received as the result of another's negligence if the plaintiff voluntarily was

involved in an illegal act at the time the injury occurred." 262 Va. 175, 179-80, 546 S.E.2d 691 (2001).

The Defendants rely on two statutes to show that the Plaintiff engaged in illegal activity when he was injured. The first statute the defendants cite makes intentionally damaging utility facilities illegal. Va. Code Ann. § 18.2-162 (Michie 1996). The statute provides:

> Any person who shall intentionally destroy or damage any facility which is used to furnish oil, telegraph, telephone, electric, gas, sewer, wastewater, or water service to the public, shall be guilty of a Class 4 felony, provided that in the event the destruction or damage may be remedied or repaired for $200 or less such act shall constitute a Class 3 misdemeanor.

*Id.*

The Plaintiff argues that the term "facility" does not include power lines; therefore, the statute fails to encompass the Plaintiff's behavior. Although Virginia Code Title 18.2 does not define "facility," other titles throughout the Code do. In Title 2.2, "public telecommunications facilities" is defined as "all apparatus, equipment, and material necessary for or associated in any way with public broadcasting stations or public broadcasting services." *Id.* at § 2.2-1301. This title also defines "telecommunications facilities" as "apparatus necessary or useful in the production, distribution, or interconnection of electronic communications for state agencies or institutions including the buildings and structures necessary to house such apparatus and the necessary land." *Id.* In Title 15.2, the definition of "authority facility" states that the term "facility may consist of or include any or all buildings, improvements, additions, extensions, replacements, machinery, or equipment." *Id.* at § 15.2-4902. In light of these definitions, the term "facility" includes power lines.

Whether the Plaintiff "intentionally destroyed or damaged" the power line are material facts in dispute. According to Meredith's Answers provided by Dominion, Meredith stated that Rob Sanson told the Plaintiff not to cut the power line because it belonged to VEPCO to which the Plaintiff responded, "I do not want VEPCO to come out here and tell me that they own this power line and they will not let me use the power line whether it is abandoned or not." The Plaintiff, however, disputes this assertion. Whether the Plaintiff intentionally destroyed the power line is an issue properly left to the fact-finder; therefore, the Court will not grant summary judgment on these grounds.

The Defendants also allege that the Plaintiff violated the law when he failed to contact Miss Utility and wait three hours upon discovery of the power line. The purpose of the Virginia Underground Utility Damage Prevention Act ("VUUDPA") is to protect underground utility lines from any damage that might occur due to excavation. The provisions of the Act make this purpose clear. *See* Va. Code Ann. § 56-265.17(B) (Michie 1995) ("The excavator shall exercise due care at all times to protect underground utility lines." *Id.* at § 56-265.24(A). "Any person excavating within two feet of either side of the staked or marked location of an operator's underground utility line or demolishing in such proximity to the underground utility line that the utility line may be destroyed, damaged, dislocated, or disturbed, shall take all reasonable steps necessary to properly protect, support, and backfill underground utility lines." *Id.*). Excavators, such as the Plaintiff:

> shall exercise due care at all times to protect underground utility lines [and] if upon arrival at the site of proposed excavation, the excavator observed clear evidence of the presence of an unmarked utility line in the area of the proposed excavation, the excavator shall not begin excavating until three hours after an additional call is made to the notification center for the area.

Va. Code. Ann. § 56-265.25(B) (Michie 1995).

The Plaintiff, however, did not notify Miss Utility and cut the line within the span of one hour. Because the Plaintiff failed to follow the terms of the VUUDPA, the Plaintiff could be liable for the cost of repairing the line he damaged; however, VUUDPA provides no other penalty for violating the statute. *Id.* at § 56-265.25(A)(1). In fact, the statute specifically states that "except as specifically set forth herein, the provisions of this chapter shall not be construed to either abrogate any rights, duties, or remedies existing under law or create any rights, duties, defenses, or remedies in addition to any rights, duties, or remedies existing under law." *Id.* at § 56-265.25(C). The only remedies the Act provides are the remedies used if a utility line is damaged. At most, the Plaintiff has merely violated the statute that only provides compensation for any damage sustained; he has not engaged in any "illegal" activity for which he faces punishment.

For these reasons, the Court rejects the Defendants' illegality argument.

## III. *Contributory Negligence*

The defendants allege that the plaintiff may not recover because he was contributorily negligent in cutting the power line. Generally, the existence of contributory negligence constitutes a factual determination reserved for the fact-finder. *Kelly v. VEPCO*, 238 Va. 32, 39 (1989). When "persons of reasonable minds could not differ," however, the court may rule on the existence of contributory negligence as a matter of law. *Id.*

In *Kelly*, the plaintiff suffered severe injuries after the aluminum ladder he moved touched an uninsulated electrical distribution line owned by VEPCO. 238 Va. at 34. The plaintiff sued VEPCO for negligently maintaining and positioning the power line that caused the plaintiff's injuries. *Id.* The jury found for the plaintiff at trial. *Id.* The trial court, upon motion to set aside the verdict, held that the plaintiff could not recover because he had been contributorily negligent as a matter of law. *Id.* The plaintiff appealed to the Virginia Supreme Court. *Kelly v. VEPCO*, 238 Va. 32, 34 (1989). On appeal, the Court affirmed the trial court's determination, barring the plaintiff from recovering as a matter of law. 238 Va. at 41.

In its opinion, the Court acknowledged that it "has recognized for years 'that the danger of electrical energy is a matter of common knowledge to all persons of ordinary intelligence and experience'." 238 Va. at 39. Despite the high degree of care electrical distributors must employ to prevent injury, a person who "is guilty of negligence which efficiently contributes to his injuries is not entitled to recover damages for such harm." *Id.* The Court rejected the plaintiff's argument that he had no idea the line was high voltage and uninsulated, explaining that "this subjective evaluation of the situation will not excuse the plaintiff's conduct because it must be measured by the objective standard of a reasonable, prudent person." *Id.*

In assessing whether the plaintiff knew or should have known that the wire was hazardous, the Court commented that the plaintiff knew of the danger of electricity and routinely observed his surroundings to verify potential hazards in the area in which he was painting. 238 Va. at 40. Despite the plaintiff's knowledge, he worked very close to and around various electrical wires with an aluminum ladder. *Kelly v. VEPCO*, 238 Va. 32, 40 (1989). He did not take necessary precautions, including employing the help of a nearby fellow painter or using a fiberglass ladder. 238 Va. at 40-41. In its analysis, the Court acknowledged that "due care demands that a person balancing a metal ladder in proximity to lines strung from power poles should either determine that the lines are not dangerous, or treat them as if they are dangerous." 238 Va. at 41.

In the case at bar, the Plaintiff appears to have failed to determine the dangerousness of the power line he cut. The Plaintiff admits that he never contacted Dominion, CLS, or Miss Utility to determine the status of the power line. In failing to contact Miss Utility after discovering the unmarked line, the Plaintiff violated the Underground Utility Damage Prevention Act. The Plaintiff merely asked Meredith's employee about the power line. The facts are in dispute as to what the employee said; however, the Plaintiff states in the motion for judgment that the comments made by Meredith's employees and agents "induced [him] to cut the line." *Mot. for J.* ¶ 21. The Plaintiff seems to have relied on the information given to him by an entity other than the supplier of the electricity or the other agencies that provide information about electrical lines. The Plaintiff also did not wear gloves when cutting the line. This behavior appears inconsistent with a person who had performed nearly fifty excavating jobs for Holt. Nevertheless, as the facts now stand, reasonable minds could differ as to whether the Plaintiff reasonably relied on Meredith's assertion.

For these reasons, the Court finds that whatever induced the Plaintiff to cut the line and whatever precautions he took, at this stage of the litigation, the issue of contributory negligence is properly left to the fact-finder. At the conclusion of the Plaintiff's case in chief, however, the Court may well have a very different view.

## IV. *Assumption of the Risk*

The Defendants contend that the Plaintiff assumed the risk of injury when he cut the line, and, thus, his claim should be barred.

The defense of assumption of the risk "connotes venturousness and involves a subjective test, i.e., whether a plaintiff fully understood the nature and extent of a known danger and voluntarily exposed himself to it." *Waters v. Safeway Stores, Inc.*, 246 Va. 269, 271, 435 S.E.2d 380 (1993) (*quoting Artrip v. E. E. Berry Equip. Co.*, 240 Va. 354, 358, 397 S.E.2d 821 (1990)). Assumption of the risk, like contributory negligence, is a defense based on a factual review of the case and, therefore, is best left to the fact-finder unless reasonable minds could not differ on the issue. *Id.*

The Plaintiff admitted knowing that severing an electrified power line could seriously injure or kill him. The Plaintiff located the power line and assumed it was live. He failed to contact Dominion, CLS, or Miss Utility; instead, he relied on the information provided to him by the employees and agents of Meredith, the owner of the project, rather than on the agencies that provide information about power lines. The Plaintiff specifically ignored the VUUDPA and, within one hour of discovery, cut the power line with cable

cutters while not wearing protective gloves. Again, reasonable minds could differ as to whether the Plaintiff reasonably relied on Meredith's assertion, depending on what the finder of fact determines Meredith said.

For these reasons, the court finds at this stage of the litigation that the issue of assumption of the risk is properly left to the trier of fact.

## V. *Workers' Compensation*

The Defendants allege that this Court lacks jurisdiction over the Plaintiff's claims because the Defendants and the Plaintiff are fellow statutory employees under the Virginia Workers' Compensation Act, and, as such, the Plaintiff's claims should be barred by the Workers' Compensation exclusivity provision.

## A. *Dominion Virginia Power's Defense*

The compensation provided by the Virginia Code is the only recovery an employee may receive for his job-related injuries. Va. Code Ann. § 65.2-307 (Michie 1995). "Every employer and employee ... shall be conclusively presumed to have accepted the provisions of [Worker's Compensation] respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment and shall be bound thereby." *Id.* at § 65.2-300(A). "Where an employee subject to the [Workers' Compensation] Act is injured by a fellow employee, an award under the Act is the exclusive remedy." *Peck v. Safway Steel Products*, 262 Va. 522, 551 S.E.2d 328 (2001).

The Plaintiff is not Dominion Virginia Power's common law employee, but, under Virginia Code § 65.2-302, all people "engaged in work that is a part of the trade, business, or occupation" of the owner or general contractor are encompassed by the Workers' Compensation Act regardless of whether a traditional common law employment relationship exists between the parties. *Pfeifer v. Krauss Constr. Co. of Va.*, 262 Va. 262, 266, 546 S.E.2d 717 (2001). "If a particular subcontractor and an injured employee's common law or statutory employer are both working on the same project and are also engaged in the owner's or general contractor's work, that particular subcontractor, as a statutory co-employee of the injured worker, is also entitled to the common law immunity provided by the exclusivity provision." *Id.* Dominion asserts that both itself and Holt, the Plaintiff's employer, were subcontractors under Meredith and, therefore, Dominion argues that it should enjoy the immunity provided by the Workers' Compensation exclusivity provision.

Whether Dominion is entitled to immunity from the Plaintiff's claims depends on whether Dominion was "engaged in work that was a part of the trade, business, or occupation of the [Plaintiff's] common law or statutory employer." *Id.* Whether Dominion Virginia Power's actions "constituted [the Plaintiff's employer's] trade, business, or occupation is a mixed question of law and fact and the answer is dependant upon the facts and circumstances of the case." *Peck v. Safway Steel Products*, 262 Va. 522, 526 (2001). First, the Court must ascertain whether Dominion and the Plaintiff shared the same statutory employer and were working on the same project. If Dominion and the Plaintiff shared the same statutory employer, the Court must then apply the "stranger to the work" test to determine whether Dominion is an "other party" under the Virginia Workers' Compensation Act. Dominion would not be protected from liability by the exclusivity provision if found to be an "other party."

Virginia Code § 65.2-302 provides that:

> when any person ... undertakes to perform or execute any work which is part of his trade, business, or occupation and contracts with any other person ... for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay any worker employed in the work any compensation under this title which he would have been liable to apply if the worker had been immediately employed by him.

Va. Code Ann. § 65.2-302(A) (Michie 1995).

The owner, therefore, is the statutory employer of the subcontractor. In this case, Meredith appears to be the owner of the contract. The Plaintiff asserts that Meredith "engaged in the business of developing and constructing residential and other properties." *Second Mot. for J.* ¶ 3.

Virginia Courts have held that "an act of delivery by [a] subcontractor ... is not tantamount to being engaged in the trade, business, or occupation of the general contractor." *Peck v. Safway Steel Products*, 262 Va. 522, 526 (2001). In *Hipp v. Sadler Materials Corp.*, 211 Va. 710, 180 S.E.2d 501 (1971), one subcontractor's employee was injured by another subcontractor's employee when he was hit by a concrete delivery truck. The Virginia Supreme Court held that Sadler merely was engaged in the delivery of concrete and "the final act of delivery [is] not an act of construction constituting the trade, business, or occupation of the general contractor." *Id.* at 711.

Both Dominion and the Plaintiff appear to have worked on the same project, and Meredith appears to be the Plaintiff's statutory employer because the Plaintiff was engaged in an act of construction constituting Meredith's trade when he laid underground telephone cable for the project. The Court, however, must also determine whether Meredith is Dominion's statutory employer. The Plaintiff asserts that Dominion "engaged in the business of providing, producing, transporting, and delivering electricity together with erecting, constructing, transporting, servicing, repairing, and maintaining electrical lines above and below ground." *Mot. for J.*, ¶ 1. In this case, however, the pleadings seem to indicate that Dominion was merely contracted to supply/provide power for the project. The record, however, is unclear as to the scope of the contract between Dominion and Meredith. More facts are required to determine whether Dominion was merely required to deliver electricity to the project or whether it had to construct and connect new electrical lines in order to facilitate the project. Such facts are essential to determining whether Dominion was engaged in the general contractor's trade and, thus, whether Meredith was Dominion's statutory employer.

If Dominion shared with the Plaintiff the same statutory employer, the Court would then address the question of whether Dominion constitutes an "other party" that the Plaintiff may sue. In this inquiry, the Court would apply the "strangers to the work" test, which requires that "in order to maintain a common law action the defendant [must] be a stranger to the trade, occupation, or business in which the plaintiff was involved." *Whalen v. Dean Steel Erection Company*, 229 Va. 164, 167, 327 S.E.2d 102 (1985). More facts are needed to complete this inquiry as well.

For these reasons, the Court will not grant summary judgment on Workers' Compensation grounds.

## B. *NoCuts' and CLS's Defense*

Defendants NoCuts and CLS had no contractual relationship with Meredith. As such, the only way they could be statutory employees with the Plaintiff is if they were employed by Dominion and, in turn, Dominion was a statutory employee of Meredith. Because it is unclear as to whether Meredith was Dominion's statutory employer, NoCuts' and CLS's relationships, if any, with Meredith are unclear; therefore, the Court will deny the motions for summary judgment.

Dominion, like CLS and NoCuts, may well prevail on its motion for summary judgment at a later stage of this litigation. At this point, though, the Court grants CLS's and NoCuts' motions for summary judgment and grants

Dominion's motion for summary judgment in part, dismissing the actions against CLS and NoCuts and dismissing the count against Dominion for failure to mark the power line. All other counts against Dominion remain.

Coincidentally, the Court today received an endorsed order of nonsuit. The Court, however, holds that the nonsuit request is not timely because the parties "have both yielded the issue to the court for consideration and decision." *Moore v. Moore*, 218 Va. 790, 795, 240 S.E.2d 535 (1978). Parties may yield the issue to the Court for decision "either as a result of oral or written argument, formal notice and motion, or by tendering a jointly endorsed sketch for a decree." *Id.* at 795-96. Here the oral argument was heard on the motions for summary judgment and memoranda of law were submitted by the parties. Nothing was left for the parties to do on these dispositive motions. The Court, then, declines to grant the nonsuit.

The Plaintiff may, if he chooses, nonsuit the remaining causes of action.