## CIRCUIT COURT OF THE CITY OF RICHMOND

Martha Clements,
Administrator of the Estate of
Ronald Brooks Clements,
deceased

v.

MCV Associated Physicians,
Commonwealth of Virginia,
and Lucian A. Durham, III

November 7, 2002

Case No. LP 792-3

BY JUDGE T. J. MARKOW

This case is before the court on:

1. Defendants' demurrer to Plaintiff's claims of negligent credentialing, negligent hiring, and fraud. In the alternative, Defendants ask the Court to bifurcate these issues from the medical malpractice claim.

2. Defendants Motion to Limit Depositions by the Plaintiff.

3. Defendant Durham's Motion to Quash and Protective Order for his Personnel files.

On demurrer, the court examines the allegations in the plaintiff's pleading to determine if they constitute a cause of action. *Peck v. Vector Resources Group, Ltd.,* 253 Va. 310 (1997). Plaintiff's allegations and all reasonable inferences taken therefrom are taken as true for this purpose. *W. S. Carnes,*

*Inc. v. Board of Supervisors*, 252 Va. 377 (1996). *See also Wedding, Inc. v. Bland County Service Auth.*, 261 Va. 218, 227-28 (2001).

Plaintiff's decedent, Ronald Brooks Clements, suffered from a congenital heart disease. Dr. Durham performed an aortic valve replacement on Clements on May 4, 2000, at the Medical College of Virginia Hospital and discharged him on May 7, 2000. Post-operatively, Clements developed bacterial endocarditis and had to be readmitted to the MCV Hospital on June 27, 2000. He underwent two surgeries, on July 12, 2000, and on July 20, 2000. Clements remained at the hospital until his death on July 24, 2000. Dr. Durham served as Clements' attending physician during his second admission. Plaintiff alleges that Dr. Durham failed to properly diagnose and treat Clements for bacterial endocarditis, resulting in Brooks Clements' death.

Plaintiff alleges that at the time of these events, Dr. Durham's employment details were as follows:

1. Employee of Virginia Commonwealth University at the Medical College of Virginia; Dr. Durham had a faculty appointment at the University and received a salary for his services.

2. Employee of Medical College of Virginia Associated Physicians; Dr. Durham provided services as a physician and surgeon for this group and received a salary for his services.

3. Privileges at Medical College of Virginia Hospital; Dr. Durham had privileges from the Virginia Commonwealth University Health Systems Hospital Authority to practice as a physician and surgeon at the Medical College of Virginia Hospital. Dr. Durham did not receive any salary from MCV Hospital to practice at its facility.

The Court will consider each of the issues raised by the Defendants separately.

### Negligent Credentialing

Plaintiff alleges that as an employer, each of the defendants had a duty to properly check the credentials of Defendant Dr. Durham before accepting him as their employee. Plaintiff alleges that Dr. Durham failed his General Surgery Board Certification Examination and became ineligible to take the Cardio-Thoracic Surgery Boards. Therefore, Dr. Durham was incompetent to practice as a Cardio-Thoracic surgeon. Defendants claim that board certification does not equate to competency.

Defendant MCV-AP claims that it does not have the authority to grant privileges to any of its physicians. Therefore, it is not involved in the credentialing process and this is an improper claim against MCV-AP.

Virginia Commonwealth University claims that it merely granted Dr. Durham a faculty appointment and it was not involved in the granting of hospital privileges. Therefore, the negligent credentialing claim is improperly asserted against it. Defendant Dr. Durham claims that he could not have credentialed his own self. Therefore, the claim is improperly asserted against him.

MCV Hospital claims that it merely granted privileges to Dr. Durham, it did not hire Dr. Durham as its employee and is under no duty to check for Dr. Durham's competency. Therefore, it only had to check for Dr. Durham's licensure, not board certification, to determine his eligibility to practice in Virginia.

A principal is liable to third parties for the torts of its employees done within the scope of employment with the principal. (Restatement (Agency, 2d), § 219(1) (1958)). In such cases, the relationship of the principal to the employee is that of master-servant, wherein the principal exercises or has the authority to exercise control over the actions of its employee. (Restatement (Agency, 2d), § 220(1) (1958)). This right of control has to be determined based on the facts and evidence in each case. (*Smith v. Grenadier*, 203 Va. 740, 746 (1962)). Comment (e) to § 220(1) of the Restatement states that a principal is not liable for the acts of independent contractors:

> The important distinction is between service in which the actor's physical activities and his time are surrendered to the control of the master; and service under an agreement to accomplish results or to use care and skill in accomplishing results. Those rendering service but retaining control over the manner of doing it are not servants.

Dr. Durham and MCV-AP claim that neither of them had any control over the credentialing process at MCV Hospital. The court agrees with Defendants Dr. Durham and MCV-AP on this matter and dismisses the negligent credentialing claim against these two Defendants.

Dr. Durham had a faculty appointment as an employee of the Virginia Commonwealth University, Medical College of Virginia. This faculty appointment does not relate to the granting of hospital privileges. Therefore, the court dismisses the negligent credentialing claim against Virginia Commonwealth University.

MCV Hospital claims that it merely granted Dr. Durham privileges to practice in its facilities and that Dr. Durham was not the agent of MCV Hospital nor an independent contractor hired to perform work for MCV

Hospital. Dr. Durham was free to treat his patients as he deemed to be appropriate. MCV Hospital provided the space and equipment to facilitate Dr. Durham's work. MCV Hospital did not direct and plan Dr. Durham's work. MCV Hospital did not have the right of control over Dr. Durham as required under Restatement (Agency 2d) §§ 219, 220 (1958) to be deemed a master-servant relationship that would impose liability on MCV Hospital for Dr. Durham's actions. The relationship between Dr. Durham and MCV Hospital was "one of co-operation, rather than subordination" (*Norfolk & Western Ry. v. Johnson*, 207 Va. 980, 983 (1967)). There is no allegation in the pleadings that MCV Hospital directly employed Dr. Durham as an independent contractor to perform services for MCV Hospital. Therefore, the *Phillip Morris, Inc. v. Emerson*, 235 Va. 380 (1980), line of cases does not apply to these facts. Any harm that may have been caused by Dr. Durham was solely in his capacity as a physician rendering care to his patient. Accordingly, MCV Hospital does not have a duty to the third party, Clements, as regards to its granting privileges to Dr. Durham. Therefore, the negligent credentialing claim against MCV Hospital is dismissed.

## Negligent Hiring

Plaintiff alleges that all Defendants, as employers of Dr. Durham, negligently hired him to treat patients. According to the Plaintiff, the record indicates that Dr. Durham failed his General Surgery Board exams multiple times. This indicates Dr. Durham's incompetence to treat patients. Plaintiff claims that Defendants failed in their duty to look into the past actions of Dr. Durham prior to hiring him. Defendants claim that Plaintiff has not shown all the elements of negligent hiring.

For a claim of negligent hiring, Plaintiff must allege that the employee had a known propensity of being a danger to others in the past, the employer knew or should have known through reasonable discovery about these acts, and the employer hired an unfit employee and placed him in a situation where he could create an unreasonable risk of harm to others. *Interim Personnel of Central Virginia, Inc. v. Messer*, 263 Va. 435, 440 (2002); *see also Simmons v. Baltimore Orioles*, 712 F. Supp. 79 (W.D. Va. 1989). Defendants claim that Plaintiff has not made any allegations that Dr. Durham was a danger to others. In the pleadings, the Plaintiff has not alleged specific facts to show that the Defendants knew or should have known that Dr. Durham would commit wrongful acts and that Dr. Durham's status as an employee involved an unreasonable risk of harm to others. There is no allegation that Dr. Durham's record prior to this employment indicates he would be a danger to others.

Failure to pass the Board exams in and of itself is not an indication that a person has a known propensity for dangerous activity. Further, Dr. Durham could not have hired himself. Therefore, the court dismisses the claim of negligent hiring as to all defendants.

## Fraud

Plaintiff claims that Defendants committed the tort of fraud by presenting false information to the Plaintiff regarding Dr. Durham's abilities and stature in the medical community. Plaintiff claims that these false representations were made in face-to-face meetings with the Plaintiff and also through advertisements.

The elements of fraudulent representation are: "(1) a false representation, (2) of a material fact [not opinion], (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." (*Winn v. Aleda Constr. Co.*, 227 Va. 304, 308 (1984)). Defendants claim that Plaintiff has not pleaded all the elements of tort of fraud. *Harris v. Dunham*, 203 Va. 760, 767 (1962).

Plaintiff alleges that Defendant MCV-AP represented to the Plaintiff that Dr. Durham was one of the best qualified physicians to treat Clements. This is a matter of opinion, not fact. MCV-AP perceived Dr. Durham to be the best qualified person to treat Clements for his particular cardiac condition. Similarly, advertisements by MCV Hospital were its opinion and marketing strategy to promote its facility. These were not statements of fact, an element of the tort of fraud. Neither has the Plaintiff alleged that Dr. Durham nor Virginia Commonwealth University made false representations regarding Dr. Durham's educational background and past experience.

Similarly, Plaintiff has not alleged that Defendants *intended* to mislead Brooks Clements with their representations. Since the Plaintiff has not alleged all the elements of fraudulent representation, this claim is dismissed as against all the Defendants.

## Bifurcation of Trial

The Court has dismissed the claims of negligent credentialing, negligent hiring, and fraudulent representation against all Defendants. Therefore, the issue of bifurcation is moot and the Court will not address this issue.

678

*Defendants' Motion to Quash and Protective Order*

Defendant asks the Court to quash Plaintiff's request for the following documents:

1. MCV Hospital's credentialing file on Dr. Durham,

2. MCV-AP's personnel file on Dr. Durham, and

3. MCV Division of Cardio-Vascular and Thoracic Surgery, Department of Surgery's file on Dr. Durham.

Defendants claim that information contained in these files is privileged and protected under §§ 8.01-581.16, 8.01-581.17 and that some of this information is subject to the attorney-client privilege. Defendants also assert that release of this information will have an adverse impact on Dr. Durham's career. Plaintiff claims that Defendants have waived their objection to discovery of this information because the objection was not timely raised and is not specific.

The Defendants claim a statutory privilege under Virginia Code §§ 8.01-581.16, 8.01-581.17 and 42 U.S.C. §§ 11111, 11112, 11151. Section 8.01-581.17(B) states:

> The proceedings, minutes, records, and reports of any (i) medical staff committee, utilization review committee, or *other* committee, board, group, commission, or other entity as specified in § 8.01-581.16 or (ii) nonprofit entity that provides a centralized credentialing service, together with all communications, both oral and written, originating in or provided to such committees or entities, are privileged communications which may not be disclosed or obtained by legal discovery proceedings unless a circuit court, after hearing and for good cause arising from extraordinary circumstances being shown, orders the disclosure of such proceedings, minutes, records, reports, or communications. Additionally, for the purposes of this section, accreditation and peer review records of the American College of Radiology and the Medical Society of Virginia are considered privileged communications.

(Emphasis added.)

MCV Hospital's credentialing file and the Department of Surgery's file on Dr. Durham fall under the umbrella of privileged communication granted by § 8.01-581.17(B). Plaintiff has not demonstrated good cause for the Circuit Court to authorize the release of this privileged information.

Plaintiff seeks to recover information regarding the hiring and credentialing of Dr. Durham from the MCV-AP Personnel file. In light of the Court's ruling that dismisses the claims of negligent credentialing, negligent hiring, and fraudulent representation, the Plaintiff's request for discovery of MCV-AP Personnel file is beyond the scope of discovery under Rule 4:1(b)(1). Therefore, the Court sustains the Defendants' Motion to Quash.

### *Defendants' Motions to Limit Depositions by Plaintiff*

Defendants claim that Plaintiff seeks to depose twelve additional witnesses. Of these, three depositions have been scheduled, nine are in dispute. Three of these witnesses, Drs. Merrell, Sugarman, and Kontos, were involved in the hiring process. One witness, Dr. O'Donnell, discovered that Dr. Durham is not board eligible while preparing for an internal review. One witness, Dr. Clark, Chief of Medical Staff of MCV Hospital, was notified of Dr. Durham's ineligibility to take the boards. One witness, Dr. Mehta, arrived at the hospital after Brooks Clements death. One witness, Dr. Retchin, had communications with Dr. Durham regarding cessation of his employment and departure from MCV Hospital. A witness in a prior deposition had mentioned second-hand information that Dr. Trani did not agree with the program designed to allow Dr. Durham to regain his board eligible status. Plaintiff wants to depose Dr. Trani.

The Court has ruled to dismiss the claims of negligent credentialing, negligent hiring, and fraudulent representation. Therefore, the Plaintiff's request for discovery by deposition of these witnesses is beyond the scope of relevant information needed to prove the standard of care and causation. The Defendant's motion to limit depositions is granted since the information sought from these persons is not within the scope of discovery.

Based on the above findings, it is therefore ordered that the demurrers to the claims of negligent credentialing, negligent hiring, and fraudulent representation are sustained, the Defendants' motions to quash Plaintiff's request for privileged documents are granted as to all Defendants, and the Defendants motions to limit depositions by the Plaintiff are granted.